MARGARET C. SPADE *vs.* LYNN AND BOSTON RAILROAD COMPANY.

Suffolk.    January 15, 1897. — May 19, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*No Recovery for Bodily Injury caused by Fright and Mental Disturbance.*

In an action to recover damages for an injury sustained through the negligence of another, there can be no recovery for a bodily injury caused by mere fright and mental disturbance.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant. The declaration alleged that while, on February 16, 1895, the plaintiff was a passenger in the defendant's car, and in the exercise of due care, " one of the defendant's agents or servants, in attempting to remove from said car a certain person claimed and alleged by said defendant's agent to be noisy, turbulent, and unfit to remain as a passenger in said car, conducted himself with such carelessness, negligence, and with the use of such unnecessary force, that said agent and servant, acting thus negligently, created a disorder, disturbance, and quarrel in said car, and thereby frightened the plaintiff and

---

subjected her to a severe nervous shock, by which nervous shock the plaintiff was physically prostrated and suffered, and has continued to suffer, great mental and physical pain and anguish, and has been put to great expense."

At the trial in the Superior Court, before *Mason*, C. J., there was evidence tending to show that the accident complained of occurred while the plaintiff was being conveyed to her home in Chelsea upon a crowded car of the defendant company, after 10.30 P. M., on February 16, 1895.

The plaintiff testified in substance that two men somewhat intoxicated were allowed, during a part of the trip from Boston to Chelsea, to stand near her in the car, one of them in a position where he was leaning or lurching toward her in such a way that she was obliged to move to avoid him ; that a controversy occurred between one of the intoxicated persons and the conductor about the payment of a fare, and that the conductor said to the intoxicated person, after some other conversation, that if he did not keep quiet he would throw him off the car, even if he broke his head; that as she neared the place where she was to leave the car, " the first thing I saw was the conductor . . . grab this man by the collar ; the next thing I saw was . . . another man from the other end of the car, whom I did not know, come down ; but the other man, as he pulled him, lurched over on me ; then it seemed as though I turned to solid ice. My breath was cut right off. I could not have spoken ; I tried to speak, but I chilled so I kept growing stiffer and stiffer, until I did not know, I do not know when they got me off the car." She further stated that nothing had occurred of any sort or description that gave any suggestion of a warning that the conductor was going to rush at the drunken man at this time ; that he did it " just as quick as a man could jump "; and that the intoxicated person standing directly in front of her " lurched over so it kind of pushed me back against the car."

The plaintiff further testified :

"*Q.* Your body was not injured in any way by contact with this man ? *A.* Oh, no, I was not injured. There were not any marks on me, anything like that.

"*Q.* You suffered no pain from this man touching you ? *A.* No, not any injury from that.

" *Q.* What was the cause of this man's touching you, the one that lurched forward? *A.* When the conductor jumped and grabbed this man that I told about, on the opposite side of the car, that made a commotion, and as he twitched him it pushed this other man over on to me."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions, the nature of which appears in the opinion.

The case was argued at the bar in January, 1897, and afterwards was submitted on briefs to all the justices.

*C. K. Cobb*, for the defendant.

*S. L. Whipple*, ( *W. R. Sears* with him,) for the plaintiff.

ALLEN, J.   This case presents a question which has not heretofore been determined in this Commonwealth, and in respect to which the decisions elsewhere have not been uniform.   It is this: whether in an action to recover damages for an injury sustained through the negligence of another, there can be a recovery for a bodily injury caused by mere fright and mental disturbance.   The jury were instructed that a person cannot recover for mere fright, fear, or mental distress occasioned by the negligence of another, which does not result in bodily injury; but that when the fright or fear or nervous shock produces a bodily injury, there may be a recovery for that bodily injury, and for all the pain, mental or otherwise, which may arise out of that bodily injury.

In *Canning* v. *Williamstown*, 1 Cush. 451, it was held, in an action against a town to recover damages for an injury sustained by the plaintiff in consequence of a defective bridge, that he could not recover if he sustained no injury to his person, but merely incurred risk and peril which caused fright and mental suffering. In *Warren* v. *Boston & Maine Railroad*, 163 Mass. 484, the evidence tended to show that the defendant's train struck the carriage of the plaintiff, thereby throwing him out upon the ground, and it was held to be a physical injury to the person to be thrown out of a wagon, or to be compelled to jump out, even although the harm consists mainly of nervous shock.   It was not therefore a case of mere fright, and resulting nervous shock.

The case calls for a consideration of the real ground upon which the liability or non-liability of a defendant guilty of neg-

ligence in a case like the present depends. The exemption from liability for mere fright, terror, alarm, or anxiety does not rest on the assumption that these do not constitute an actual injury. They do in fact deprive one of enjoyment and of comfort, cause real suffering, and to a greater or less extent disqualify one for the time being from doing the duties of life. If these results flow from a wrongful or negligent act, a recovery therefor cannot be denied on the ground that the injury is fanciful and not real. Nor can it be maintained that these results may not be the direct and immediate consequence of the negligence. Danger excites alarm. Few people are wholly insensible to the emotions caused by imminent danger, though some are less affected than others.

It must also be admitted that a timid or sensitive person may suffer not only in mind, but also in body, from such a cause. Great emotion may and sometimes does produce physical effects. The action of the heart, the circulation of the blood, the temperature of the body, as well as the nerves and the appetite, may all be affected. A physical injury may be directly traceable to fright, and so may be caused by it. We cannot say, therefore, that such consequences may not flow proximately from unintentional negligence, and if compensation in damages may be recovered for a physical injury so caused, it is hard on principle to say why there should not also be a recovery for the mere mental suffering when not accompanied by any perceptible physical effects.

It would seem therefore that the real reason for refusing damages sustained from mere fright must be something different; and it probably rests on the ground that in practice it is impossible satisfactorily to administer any other rule. The law must be administered in the courts according to general rules. Courts will aim to make these rules as just as possible, bearing in mind that they are to be of general application. But as the law is a practical science, having to do with the affairs of life, any rule is unwise if in its general application it will not as a usual result serve the purposes of justice. A new rule cannot be made for each case, and there must therefore be a certain generality in rules of law, which in particular cases may fail to meet what would be desirable if the single case were alone to be considered.

Rules of law respecting the recovery of damages are framed

with reference to the just rights of both parties; not merely what it might be right for an injured person to receive, to afford just compensation for his injury, but also what it is just to compel the other party to pay.   One cannot always look to others to make compensation for injuries received.   Many accidents occur, the consequences of which the sufferer must bear alone.   And in determining the rules of law by which the right to recover compensation for unintended injury from others is to be governed, regard must chiefly be paid to such conditions as are usually found to exist.   Not only the transportation of passengers and the running of trains, but the general conduct of business and of the ordinary affairs of life, must be done on the assumption that persons who are liable to be affected thereby are not peculiarly sensitive, and are of ordinary physical and mental strength.   If, for example, a traveller is sick or infirm, delicate in health, specially nervous or emotional, liable to be upset by slight causes, and therefore requiring precautions which are not usual or practicable for travellers in general, notice should be given, so that, if reasonably practicable, arrangements may be made accordingly, and extra care be observed.   But, as a general rule, a carrier of passengers is not bound to anticipate or to guard against an injurious result which would only happen to a person of peculiar sensitiveness.   This limitation of liability for injury of another description is intimated in *Allsop* v. *Allsop*, 5 H. & N. 534, 538, 539.   One may be held bound to anticipate and guard against the probable consequences to ordinary people, but to carry the rule of damages further imposes an undue measure of responsibility upon those who are guilty only of unintentional negligence.   The general rule limiting damages in such a case to the natural and probable consequences of the acts done is of wide application, and has often been expressed and applied.   *Lombard* v. *Lennox*, 155 Mass. 70.   *White* v. *Dresser*, 135 Mass. 150.   *Fillebrown* v. *Hoar*, 124 Mass. 580.   *Derry* v. *Flitner*, 118 Mass. 131.   *Milwaukee & St. Paul Railway* v. *Kellogg*, 94 U. S. 469, 475.   *Wyman* v. *Leavitt*, 71 Maine, 227.   *Ellis* v. *Cleveland*, 55 Vt. 358.   *Phillips* v. *Dickerson*, 85 Ill. 11.   *Hampton* v. *Jones*, 58 Iowa, 317.   *Renner* v. *Canfield*, 36 Minn. 90.   *Lynch* v. *Knight*, 9 H. L. Cas. 577, 591, 595, 598.   *The Notting Hill*, 9 P. D. 105.   *Hobbs* v. *London & Southwestern Railway*, L. R. 10 Q. B. 111, 122.

The law of negligence in its special application to cases of accidents has received great development in recent years. The number of actions brought is very great. This should lead courts well to consider the grounds on which claims for compensation properly rest, and the necessary limitations of the right to recover. We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without. The logical vindication of this rule is, that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright; and that this would open a wide door for unjust claims, which could not successfully be met. These views are supported by the following decisions. *Victorian Railways Commissioners* v. *Coultas*, 13 App. Cas. 222. *Mitchell* v. *Rochester Railway*, 151 N. Y. 107. *Ewing* v. *Pittsburg, Cincinnati, Chicago, & St. Louis Railway*, 147 Penn. St. 40. *Haile* v. *Texas & Pacific Railway*, 60 Fed. Rep. 557.

In the following cases, a different view was taken. *Bell* v. *Great Northern Railway*, 26 L. R. (Ir.) 428. *Purcell* v. *St. Paul City Railway*, 48 Minn. 134. *Fitzpatrick* v. *Great Western Railway*, 12 U. C. Q. B. 645. See also Beven, Negligence, 77 *et seq.*

It is hardly necessary to add that this decision does not reach those classes of actions where an intention to cause mental distress or to hurt the feelings is shown, or is reasonably to be inferred, as, for example, in cases of seduction, slander, malicious prosecution, or arrest, and some others. Nor do we include cases of acts done with gross carelessness or recklessness, showing utter indifference to such consequences, when they must have been in the actor's mind. *Lombard* v. *Lennox*, and *Fillebrown* v. *Hoar*, already cited. *Meagher* v. *Driscoll*, 99 Mass. 281.

In the present case, no such considerations entered into the rulings or were presented by the facts. The entry therefore must be,

*Exceptions sustained.*