ISAIE BERARD *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

Worcester.    October 2, 1900. — November 28, 1900.

Present: KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Whether Evidence justified a Finding that Personal Injuries were caused
by Fright.*

At the trial of an action for personal injuries, it appeared that the plaintiff was
driving in the early morning in a "low down" wagon across a grade crossing
on a public street, when the horse was struck by a rapidly moving railroad train
and killed, and the wagon demolished, and that he jumped from the wagon to
save his life, and, landing on his feet, was not hit by the train. He testified that
at the time the "breeze was so hard" that it "kind of twisted" him half way
around or more; that he felt dizzy and nervous; that in the afternoon of the
same day he went to bed and sent for a doctor, and was confined to the house
about three weeks; and that during all that time he felt sick all through his
body, — "kind of pains in [his] side and heart," and that he "was troubled with
[his] water a few days after that." There was evidence that he was a well man
before the accident, but that since that time his heart had been affected and he
had been unable to attend to his business. His physician testified that in his
judgment the cause of the trouble was a "shock to the nervous system"; that
the heart was weak, the trouble being functional and not organic; that he could
not find in the books any explanation of the cause of the weakness, and that he
should judge the plaintiff to be about forty-five or fifty years of age. It did not·
appear that there were any external signs of injury upon the plaintiff's body.
*Held,* that the evidence would warrant a finding that physical injury other than
that caused by fright was suffered by the plaintiff.

TORT, for personal injuries.    Trial in the Superior Court
before *Stevens*, J., who, at the request of the defendant, directed
the jury to return a verdict for the defendant on the ground
that there was no evidence of a physical injury to the plaintiff
except that caused by fright, and reported the case for the
determination of this court. If the ruling, as matter of law,
was correct, then the verdict was to stand; otherwise, there was
to be a new trial.

*W. Thayer, (H. W. Cobb* with him,) for the plaintiff.

*F. P. Goulding,* for the defendant.

HAMMOND, J.    On this report the only question before us is
whether the evidence would justify a finding by the jury that

any physical injury except that caused by fright was done to the plaintiff.

The plaintiff was driving in a "low down" milk wagon across a grade crossing on a public street in Worcester, when the horse which he was driving was struck by a rapidly moving railroad train and killed, and the wagon demolished. The plaintiff and his son saved themselves by jumping from the wagon when the train was close to the horse. The plaintiff landed upon his feet, and he was not hit by the train. He testified that when he jumped out he was so near the train and the "breeze was so hard" that it "kind of twisted" him half way around or more, and that he felt dizzy and nervous at the time.

The accident occurred early in the morning, and the plaintiff testified that in the afternoon of the same day he went to bed, sent for a doctor, and was confined to the house about three weeks; and that during all that time he felt sick all through his body, — "kind of pains in [his] side and heart," and that he "was troubled with [his] water a few days after that." There was also evidence tending to prove that he was a well man before the accident, but that since that time his heart has been affected and he has been unable to attend to his business.

The plaintiff called his physician, who testified that he had attended the plaintiff frequently, and that in his judgment the cause of the plaintiff's trouble was a "shock to the nervous system"; that the heart was weak, but that the witness could not find in the books any explanation of the cause of the weakness; that the trouble with the heart was functional and not organic; and that he should judge the plaintiff to be about forty-five or fifty years of age.

It did not appear that there were any bruises or other external signs of injury upon the plaintiff's body.

After he jumped, the first thought of the plaintiff was for his boy, who, he feared, might be dead, but upon looking around he discovered him a short distance away, crying.

The evidence tended to show that the plaintiff and his son were compelled to jump hastily to save their lives, and that the plaintiff was frightened; and it may well be that a jury would be warranted in finding that to this fright may be attributed

much the larger portion, if not all, of the physical injury from which the plaintiff has since suffered.

But we do not think that it can be said, as matter of law, that all the physical injury received by the plaintiff was caused by fright. He was about forty-five or fifty years of age. The jury saw him upon the witness stand, and could judge of his size, weight, and agility. He is called upon to jump when it may be fairly assumed that he would not spend much thought upon the order of his going. Immediately upon reaching the ground he feels nervous and dizzy. After the excitement attending the accident has abated he feels worse, goes to bed, and stays there three weeks, during which time he is " sick all through " his body, has pains in his side and heart, and for a part of the time is " troubled with his water."

When a man of the age of the plaintiff suddenly jumps from his team and strikes the ground under such circumstances, it would not be strange if his muscles should be strained, and that by the jar to his body when he strikes the ground a physical shock of greater or less force should be given to the body, resulting in soreness and pains. And in this case a jury might have found that the pains experienced during the first three weeks after the accident were due to unusual exertion in jumping, and to the physical shock caused by the impact of the plaintiff's body with the ground. We cannot say as matter of law that such a finding would not be warranted by the evidence.

It is true that the plaintiff's physician testified that in his opinion the plaintiff's injuries were due to a " shock to the nervous system " ; but even if it be assumed that the physician intended by this to say that the shock was due entirely to fright, the jury, in view of all the evidence, may not have entirely agreed with him.

Upon the evidence, therefore, we think that the questions whether any part of the injuries from which the plaintiff suffered were the result of the accident, and whether and to what extent they were caused by fright, are for the jury. *Warren* v. *Boston & Maine Railroad*, 163 Mass. 484. *Buchanan* v. *West Jersey Railroad*, 23 Vroom, 265.

Since by the terms of the report there must be a new trial in which the evidence may not be the same as that presented in

this report, it is premature to discuss at this stage of the case whether and to what extent the rules adopted in *Spade* v. *Lynn & Boston Railroad*, 168 Mass. 285, and 172 Mass. 488, are applicable to the circumstances of this case.

*New trial granted.*