FLORENCE DRISCOLL *vs.* JOHN A. GAFFEY.
CATHERINE A. DRISCOLL *vs.* SAME.

Essex.   November 2, 1910. — November 22, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* In blasting, *Res ipsa loquitur.*   *Evidence,* Presumptions and burden of proof. *Actionable Tort.*   *Practice, Civil,* Judge's charge.   *Husband and Wife. Nuisance.*

At the trial of an action of tort for personal injuries alleged to have been caused by negligence of the defendant's servants in blasting rock, there was evidence that the rock being blasted was seven hundred and fifty feet from the plaintiff's house, and that there was no covering put over the rock at the time of a certain blast that was described by a witness as a "great explosion which shook the barn," and which threw a piece of rock weighing twenty pounds into the plaintiff's house, causing the injuries to the plaintiff. *Held,* that the question whether the servants of the defendant were negligent was for the jury.

Where, at the trial of an action of tort for personal injuries alleged to have been caused by negligence of the defendant's servants in blasting rock, there was evidence of such negligence in the blasting besides the mere fact of a rock being hurled seven hundred and fifty feet into the plaintiff's house, and the presiding judge in his charge told the jury that the burden of proving such negligence was upon the plaintiff, and that upon the question of negligence they were not to take into account the results of the blast, but on the contrary were to judge of the negligence by the situation just before the blast, it was *held,* that the defendant had no ground for a contention that the jury were allowed to find for the plaintiff by an application of the doctrine of *res ipsa loquitur.*

At the trial of an action of tort by a woman for personal injuries, it appeared that through negligence of the defendant in blasting rock a large piece of rock was hurled seven hundred and fifty feet into the plaintiff's house, and a question was whether the defendant was exempt from liability because the plaintiff's injuries were merely from fright, terror, alarm, anxiety or distress of mind, unaccompanied by any injury to the person from without.   The plaintiff testified in direct examination that she had left her pantry to go to a closet and was just coming from the closet when it seemed that she was thrown over on the floor, that the closet door hit her, but that she did not think it was the force of the door that threw her, that it seemed as if the house was falling in, that immediately afterward she went into the kitchen, saw everything upset, everything thrown around the closet, the sink and the stove, that she did not know that there was any rock there until her son found it, and that there were no marks on her body from contact with anything.   On cross-examination she testified that she "could not say positively whether the door hit" her or not.   The plaintiff's attending physician testified in substance that he saw her the next day, that "her condition was one of nervous shock," that he "called the trouble neurasthenia . . . what the ordinary layman would call a nervous breakdown from the shock," that "the fright she sustained . . . was an adequate cause for this injury, and the nervous shock was due to fright, and so the nervous shock is the cause that I attribute to the condition, and the only cause."

*Held,* that, in spite of the physician's testimony, the jury might have found that the plaintiff was violently thrown to the floor either by being struck by the closet door or in some other way due to the blast, that consequently there was a battery to her person, to which at least some of her physical troubles were in part attributable, and therefore that it was proper to refuse to rule that the action could not be maintained.

The rule that, in actions of tort for personal injuries, where it is proved that the defendant has been negligent, there nevertheless can be no recovery by the plaintiff if the negligence, without inflicting upon the plaintiff any injury "from without," causes only fright, terror, alarm, anxiety or distress of mind, is an arbitrary exception, based upon a notion of what is practicable, to the general rule allowing recovery for damages caused by negligence; and therefore a charge to the jury, before whom was being tried an action where the physical injury to the plaintiff "from without" was so slight as to leave no mark or bruise, in which it was stated in substance that it would be sufficient if the injury caused by the battery was very slight, is not objectionable because, where the injury from without is appreciable even although it be very slight, the general rule applies and the exception does not.

It is a presumption of fact that, in the absence of anything to the contrary, a husband is liable to pay a reasonable compensation to a physician who has attended his wife professionally for over a year, and, where it appears that the attendance was due to injuries caused by negligence of a third person which gave the wife a right of action against the negligent person, the husband also has a right of action against such person for the amount for which he is liable to the physician.

Where during certain blasting operations a large piece of rock is hurled through the air and into a house, causing a door to strike a woman and injure her, *whether* such woman has a right of action in tort against the person doing the blasting without proof of negligence, here was not decided, the case having been tried on the theory, adopted by the parties and by the presiding judge, that the gist of the action was negligence on the part of the defendant.

HAMMOND, J.   In the second of these two cases, which were tried together, the wife sues for compensation for injuries received through the negligent blasting of a ledge by the defendant, and in the first the husband sues to recover expenses incurred by him in the medical treatment and care of his wife on account of such injuries.   In each case the jury found for the plaintiff; and both cases are before us upon the defendant's exceptions to the refusal of the presiding judge * to give certain rulings requested by him, and to a certain part of the charge. The case of the wife will be first considered.

It is strongly urged by the defendant that there was 'no evidence of negligence in the method of blasting.   But we think that the question whether the charge was covered or otherwise

* *Lawton,* J.

properly protected, and whether, if it had been, the rock would have been hurled to the plaintiff's house, were for the jury.[*] Much of the defendant's brief is devoted to a discussion of the doctrine of *res ipsa loquitur;* and it is contended that the doctrine is not applicable to the circumstances of this case. We do not find upon the record that the presiding judge said it was. On the contrary, after speaking of the various respects in which the plaintiff charged negligence of the defendant, he proceeds in his charge as follows: "You are to bear in mind — I again repeat it — that it is not . . . simply [for her] to say, why, here is a rock thrown, and we do not generally ex pect rocks to be thrown from a blast into a person's house, and now it is for the defendant to show that he was in the exercise of due care. . . . That is not the rule here. The throwing of the stone is conceded. The burden is upon the plain tiff to show you that the defendant was negligent in some of these ways or in all of them, that she, the plaintiff, has suggested. And in considering that question I again say to you you are not to take into account the results. You are in your mind's eye to go there on to the premises before anything is done, before any accident has happened, you are to look over the situation there, you are to take into account what people of prudence engaged in this sort of business should do, and you are to say whether in all respects these people did do the things which persons in that situation, having regard to the surroundings the possibilities of an accident, — you are to say whether these people did all that a person ought to have been expected to do under the circumstances. And if you have any doubt as to whether the defendant did do all the things that he ought to have done under the circumstances there in the way of conducting that blast, if you have any doubt about it, you are to bear in mind that the burden is upon the plaintiff to satisfy you that he did not do it, and not upon him to satisfy you that he did do it."

---

[*] There was evidence that the distance from the ledge that was being blasted to the plaintiff's house was seven hundred and fifty feet, that there was no covering on the ledge at the time of the blast, that the blast was " a great explosion which shook the barn," and that the rock which was hurled into the plaintiff's house weighed twenty pounds.

Here in plain language the jury were told that the burden of proving negligence of the defendant was upon the plaintiff, and that upon this question of negligence they were not to take into account the results of the blast, but on the contrary were to judge of the negligence by the situation just before the blast. This *ex vi termini* excludes the doctrine of *res ipsa loquitur*.

It is next urged by the defendant that there was no evidence of physical injury, but that on the contrary the illness of the plaintiff was due solely to fright. If that is so, then there can be no recovery. The law upon this subject is well settled in this State. "We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without." Allen, J., in *Spade* v. *Lynn & Boston Railroad*, 168 Mass. 285, 290. As said by Holmes, C. J., in *Homans* v. *Boston Elevated Railway*, 180 Mass. 456, 457, the exemption from damages of this kind "is an arbitrary exception, based upon a notion of what is practicable." Where, however, the fright or mental disturbance is accompanied as a result of the same accident by physical injury "from without," then in the damages to be assessed there should be included not only those directly due to the injury from without but also those attributable to the mental shock or disturbance. And it is not necessary that the physical injury from without should be indicated upon the surface of the body by a bruise or otherwise. *Berard* v. *Boston & Albany Railroad*, 177 Mass. 179. *Steverman* v. *Boston Elevated Railway*, 205 Mass. 508, and cases cited. An internal injury caused by a blow from without is none the less an injury from the fact that it is wholly internal, or indeed from the fact that its true nature cannot be accurately diagnosed except by a *post mortem* examination.

As to the injury from without, the plaintiff testified as follows: "I had been to the pantry to get a light lunch for the children, had left there and had gone to the closet. I was just coming from there when it seemed that I was . . . [thrown] . . . over on the floor. The closet door hit me, but I don't think it

was the force of the door that threw me. It seemed as if the house was falling in; that is all I can think of. There was a terrible crash and the house was falling. The next thing the little boy was picking me up. . . . Immediately after that I came into the kitchen, saw everything upset. . . . Everything was thrown around there, around the closet, around the sink, and around the stove. The curtain was in the middle of the floor. I didn't know there was any rock there until the little boy found it. Afterwards I went out on the piazza. There were no marks on my body from contact with anything on the day of this blast." On cross-examination she said: " I couldn't say positively whether the door hit me or not. I felt something hit me. It seemed as if I was caught and thrown. I didn't go down hard enough to get any bruises."

The plaintiff's son testified that at the time of the blast he was in the kitchen; that he heard the noise, but " didn't stop to see if the pantry door was open "; he " heard lots of dishes break," and found his " mother on the floor just a couple of seconds or so after the blast," and helped her up. The plaintiff's husband testified that he heard the explosion, went into the house and found his wife " all broken up and shaking." She was on her feet. Dr. Shatswell testified that he had attended the plaintiff at various times, and continued as follows: " Prior to the accident she was a remarkably well woman. , My attention was called to her the next day [after the accident], namely, March 8th. Her condition was one of nervous shock. She was crying and wringing her hands. She was nervous and excitable. . . . She complained of headaches and backaches. . . . I called the trouble neurasthenia. It is what the ordinary layman would call a nervous breakdown from the shock." On cross-examination he said: " I treated her simply for nervousness. There was no mark of physical violence on her person. . . . She didn't complain of anything of the kind. When I said that the explosion was an adequate cause for this injury, I meant that the fright she sustained at the time was an adequate cause for the injury, and the nervous shock was due to fright, and so the nervous shock is the cause that I attribute to the condition, and the only cause."

Upon this evidence the defendant might reasonably have en-

tertained a belief that the jury would adopt what seemed to be the view of the attending physician and conclude that the plaintiff suffered no physical injury from without, but that all her physical ailments were to be attributed solely to the mental shock. But they were not bound to take the physician's view. They might have thought that his attention was from the first attracted rather to what he regarded as the more serious and lasting effects of the accident than to comparatively insignificant injuries due to the fall upon the floor. They might have found that either by being struck by the closet door, or in some other way due to the blast, she was violently thrown to the floor, and that consequently there was a battery to her person, and that at least some of her physical troubles were in part attributable to this. The case was therefore properly submitted to the jury, and the first ruling requested * was properly refused.

In the charge to the jury it was stated in substance that it would be sufficient if the injury caused by the battery was very slight. To this the defendant excepted and now urges in support of the exception that the effect of such a rule is substantially to abrogate the general rule that where the injury is due solely to shock there can be no recovery. But it is to be borne in mind that this general rule is, as stated above, an exception, founded upon notions of practicability, to the more general rule of damages for which a negligent defendant is answerable. It is to be applied only where there is no injury from without. And we are of opinion that the more general rule applies where the injury from without is appreciable even although it be very slight. The criticism on this part of the charge is untenable.

As to the remaining rulings requested by the defendant, it is sufficient to say that so far as in accordance with the law they were in substance covered by the charge. Indeed the charge was apt, full and correct in law; its well chosen language was well calculated to help the jury to a clear understanding of the issues involved, and of the law. We see no error in the action of the court.

The case must be placed in the class of which *Berard v. Boston & Albany Railroad*, 177 Mass. 179, is a type.

---

* This was a ruling that on all the evidence the action could not be maintained.

As to the first case, the defendant, in addition to the reasons given in the second case why a verdict should have been ordered for the defendant, urges one further consideration specially applicable to this case. It is argued by him that there is nothing to show that the plaintiff suffered any personal injury whatever, or that he was put to any expense for the care and nursing of his wife. But this position is untenable. It appears that a physician attended professionally the plaintiff's wife for more than a year; and no authorities need be cited to show that in the absence of anything to the contrary the presumption is that the physician is entitled to reasonable compensation, and that the plaintiff is answerable to him for it. And there is nothing in this case which necessarily overcomes this presumption. This case was also properly submitted to the jury.

This opinion has been written upon the theory propounded by the plaintiff and adopted by the court and defendant at the trial as the true theory, namely, that the gist of the plaintiff's action was negligence on the part of the defendant. Whether the action could have been maintained without showing such negligence we have not considered.

In each case the entry must be

*Exceptions overruled.*

*R. Spring,* (*G. E. Kimball* with him,) for the defendant.
*D. N. Crowley,* (*G. C. Donaldson* with him,) for the plaintiffs.