CHARLES H. HUNNEWELL'S CASE.

Suffolk.    November 17, 1914. — February 27, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Workmen's Compensation Act.    Proximate Cause.*

Upon an application of an employee that compensation under the workmen's compensation act for actual incapacity for work should be continued beyond the date previously fixed, the Industrial Accident Board found that the employee's "total incapacity for work on account of said personal injury will cease . . . [on a day named which was three days after the date of application] subject to the right of said employee to compensation on account of partial incapacity for work under § 10, Part II of the workmen's compensation act, depending upon his ability to earn wages." About six months later the employee filed a request for "a review of weekly payments as provided by § 12, Part III of the act," and the Industrial Accident Board, after a hearing, found that the employee was "partially incapacitated for work" as the result of his original injury, and made an award of weekly compensation under St. 1911, c. 751, Part II, § 10 from a day named which was about four months after the cessation of the payments for his total incapacity for work, to continue so long as his partial incapacity for work should last, which was declared not to be determinable at that time. *Held,* that the board had jurisdiction to make this finding on the question which had been left open by their previous decision, and that the fact that there was an interval of six months during which all weekly payments had ceased did not prevent the decision of this open question when the request under the statute for a review was made by the employee. *Held, also,* that there was no error in making the weekly payments awarded by the board begin two months before the date of the filing of the request for a review, such a retroactive award being within the lawful power of the board.

Where under the workmen's compensation act an employee had been awarded compensation for total disability during a certain period by reason of a slight injury to his eye, and where upon a request for a review of weekly payments under St. 1911, c. 751, Part III, § 12, it was found by an arbitration committee that, although the employee had recovered completely from the injury so far as his eye itself was concerned, "the injury to the eye caused a nervous upset and a neurotic condition which is purely functional," and the Industrial

Accident Board found that the employee was "partially incapacitated for work by reason of a condition of hysterical blindness and neurosis, said condition having a causal relation with the personal injury," and these findings were warranted by the evidence, the Industrial Accident Board properly may make an award to the workman under St. 1911, c. 751, Part II, § 10, on account of partial incapacity for work.

RUGG, C. J.   The employee received an injury to his left eye in the course of his work for an employer under the workmen's compensation act, St. 1911, c. 751, on January 25, 1913.  He was paid compensation without question until May 31, 1913.  Then a hearing was had before an arbitration committee under Part III, § 7, as amended by St. 1912, c. 571, § 12, who on July 28, 1913, made an award of a weekly compensation based on total disability to be paid until October 19, 1913.  No claim for review of this decision was filed and it became binding on the parties. On October 16, 1913, the Industrial Accident Board gave a hearing upon the claim of the employee that his compensation should be continued on account of actual incapacity for work.  On November 5, the board filed their finding to the effect that the employee's "total incapacity for work on account of said personal injury will cease . . . on October 19, 1913, subject to the right of the said employee to compensation on account of partial incapacity for work under § 10, Part II of the workmen's compensation act, depending upon his ability to earn wages."  In accordance with this finding, payment of all compensation to the employee ceased on October 19, 1913.  The employee, on May 4, 1914, filed a request for "a review of weekly payments as provided by § 12, Part III of the act," which empowers the board to review "any weekly payment under this act."  After a hearing, the board found that the employee was "partially incapacitated for work" as a result of his injury of January 25, 1913, and made an award of weekly compensation dating from February 1, 1914, to continue so long as his partial incapacity should last, a period not determined by the finding.  Thus it appears that, by decisions and findings, the employee was refused compensation from October 19, 1913, to February 1, 1914.. The insurer seasonably objected to proceedings before the board and now contends that their findings were an excess of jurisdiction.*

---

* A decree was made in the Superior Court by *Jenney*, J., declaring that the employee was entitled to a weekly payment of $10 "from February 1,

The insurer rightly contends that the finding of the arbitration committee, no review having been requested, bound the parties as to all matters covered by it and that it cannot be reviewed under the machinery provided by the act. *Young* v. *Duncan*, 218 Mass. 346. That finding correctly interpreted does not mean that all compensation shall cease on October 19, 1913, nor that all disability arising from the injury will be at an end on that date. There is no categorical finding to that effect, nor is such a decision fairly to be implied from the terms in which the finding is couched. The finding fixes the amount of compensation on the basis of total disability and payment will end on that day by force of the period limited for its continuance, unless something further is done. But that is its extent. It does not purport to prevent an application to the board under Part III, § 12, before the expiration of the delimited period for a review of the weekly payments allowed. To continue further the same or a smaller weekly payment would be in effect to increase a payment awarded by the arbitration committee which was to cease on October 19, 1913. The employee was not precluded from applying to the board under that section before his weekly payments had ceased.

The board on that application by the employee went no further than to say that the total disability would end on October 19. It did not award any weekly payment for partial disability, nor make any finding on that point, but in effect left it open for later decision "depending upon his ability to earn wages."

The action of the board was not an unqualified decision to end all payments under the act. Such a decision would mean that incapacity of whatever degree arising from the injury had disappeared finally. Doubtless after such a decision the board would be without power to revive the matter. It would have become ended and be entirely a thing of the past. The doctrine of *res judicata* would apply to it. *Nicholson* v. *Piper*, [1907] A. C. 215. *Green* v. *Cammell, Laird & Co. Ltd.* [1913] 3 K. B. 665. In this respect our act is in substantially the same words as the English

1914, and continuing during the period of his partial incapacity for work, which is not now determinable, the total amount due to June 10, 1914, being $184.29," and ordering the payment by the insurer to the employee of that sum of money. The insurer appealed.

act and hence English decisions made before the passage of our act are strongly persuasive of the meaning intended by the General Court. *McNicol's Case*, 215 Mass. 497, 499. The form of the decision of the board was only that the total disability had ceased, but whether there was a partial disability or not was left open for further consideration to be determined somewhat in the light of future ability to get work. The weekly payment was ended absolutely so far as it rested on the basis of total disability, but it was suspended only until the further order of the board, so far as it might later be found to have a sound basis in partial disability. In substance the decision was that total disability was over, but whether there would be a partial disability arising out of the injury was a question as to which they were not at that time prepared to give a decision either way, but desired to leave it open still as a question to be answered as the facts might warrant at some future time. This course is justified by the act. It has been the custom under the English act to award compensation at the rate of a penny a week under these circumstances. *Owners of the Vessel Tynron* v. *Morgan*, [1909] 2 K. B. 66; *S. C.* 2 B. W. C. C. 406. *Griga* v. *Owners of the Ship Arelda*, 3 B. W. C. C. 116. That course never has been followed, so far as we are aware, under our act. But it is not necessary even in England that this be done in order to keep the case alive, provided the purpose is plain not to terminate the claim definitively, but to keep it open for further consideration and order. *Taylor* v. *London & North Western Railway*, [1912] A. C. 242, 245. That purpose is manifest in the decision here under review. There is nothing in the words of our act which prevents the board from pursuing this course. The procedure should be flexible and adapted to the direct accomplishment of the aim of the act, with as little formality or hampering restriction as is consistent with the preservation of the real rights of the parties and the doing of justice according to terms of the act. It is within the power of the board to decide that for a time compensation shall be suspended but not ended, with reservation of leave to the employee to apply for further payments under the act, provided this course in their opinion is required by the facts. There is nothing inconsistent with this conclusion in *Burns's Case*, 218 Mass. 8.

It is urged that because all weekly payments in fact stopped, there was nothing further for the board to deal with under Part III, § 12, and that it could not end, diminish or increase a weekly payment which had ceased to exist six months before the hearing. That contention would be unanswerable if the earlier decision had been that weekly payments should end finally. But, as has been pointed out, that was not the earlier decision and the board in its decision now under review was proceeding strictly in accordance with the lines left open by express reservation in its former decision. The propriety of such a decision, in order to further the purpose of the act, has been pointed out in *Owners of the Vessel Tynron* v. *Morgan*, [1909] 2 K. B. 66, at page 70. If, for example, the injury is of such nature that the employee may work at full pay at certain times dependent upon temperature or climate, and at other seasons is incapacitated, it would not be in harmony with the design of the act either to give him compensation while he was earning his normal wages or to deny it to him during the time when incapacitated by his injury.

The decision in this respect might be made to take effect as of a date antecedent to the date of the application. *Bagley* v. *Furness, Withey & Co. Ltd.* [1914] 3 K. B. 974. *Gibson & Co.* v. *Wishart*, [1914] W. N. 232. Hence the award of the board on the application of the employee filed in May, that the weekly compensation should be paid from the first of the preceding February, was within their lawful power.

The physical injury to the eye of the employee in the case at bar was slight and he soon recovered from it completely so far as concerned harm to the organ itself. But the arbitration committee found that "the injury to the eye caused a nervous upset and a neurotic condition which is purely functional." The Industrial Accident Board found that he was "partially incapacitated for work by reason of a condition of hysterical blindness and neurosis, said condition having a causal relation with the personal injury." These findings, which seem to be identical in substance, were warranted by the evidence. Apparently he did not have sufficient will power to throw off this condition and go to work as his physical capacity amply warranted him in doing. But such a condition resulting from a battery is an injury for which a tortfeasor would be liable in damages. *Spade* v. *Lynn*

*& Boston Railroad,* 168 Mass. 285; *S. C.* 172 Mass. 488. *Berard v. Boston & Albany Railroad,* 177 Mass. 179. *Homans* v. *Boston Elevated Railway,* 180 Mass. 456. *Bell* v. *New York, New Haven, & Hartford Railroad,* 217 Mass. 408, 410. The same principle applies to injuries flowing as a proximate result from an actual physical impact received by an employee under the act in the course of and arising out of his employment.

*Decree affirmed.*

*W. B. Luther,* for the insurer.
*A. R. Shrigley,* for the employee.