Hillsborough, }
Jan. 6, 1925. }

### NELLIE KENNEY v. WONG LEN & a.

The proprietor of a restaurant is chargeable with negligence in serving to a cus-
tomer food containing a deleterious foreign substance, if keeping ordinary
watch and giving ordinary attention while the food was in process of prepara-
tion would have disclosed the presence of that substance.

There may be a recovery of damages for physical sickness and mental suffering
due solely to fright and disgust caused the customer by putting in her mouth
an unpleasant foreign substance introduced into the food by the negligence of
the proprietor of the restaurant.

In such a case the plaintiff may recover damages for physical suffering and mental
distress due to a peculiar susceptibility to fright from the particular substance
in question.

There is no warranty, under the sales act, of the quality of food served at a public
restaurant.  The transaction is predominantly one of service rather than of a
sale of goods, and the sales act does not apply.

There is no implied warranty that food served at a public restaurant is fit to eat.
In the absence of grounds for suspicion, a customer in a restaurant is not negligent in failing to inspect the food served, before eating it.
The offer of a payment in compromise of the plaintiff's claim cannot be shown as evidence of an admission of liability.

CASE, for negligence for personal injuries. While a customer at the defendants' restaurant, the plaintiff ate some food containing a dead mouse. Its discovery made her sick, and a nervous shock resulted. Trial by jury and verdict for plaintiff. The defendants excepted to the denial of their motion for a directed verdict in their favor, and during the trial took other exceptions referred to in the opinion. To the withdrawal of a count in the writ for breach of warranty the plaintiff excepted. Further facts appear in the opinion. Transferred by *Branch*, C. J.

*Doyle & Doyle (Mr. Paul J. Doyle* orally), for the plaintiff.

*Warren, Howe & Wilson (Mr. Howe* orally), for the defendants.

ALLEN, J. I. In support of the exception to the denial of the motion for a directed verdict the defendants contend, first, that they were under no duty to anticipate the presence of the mouse in the food, and second, that there is no recovery for fright caused by negligence in the absence of immediate physical injury.

As to the first ground, there was a duty to anticipate if ordinary men in the defendants' place would have foreseen the danger in acting for their customers' safety. Whether they would or not is a question of fact to be determined affirmatively only if there is evidence tending to show it. As a form and expression of due care, anticipation is a precautionary consideration of what may happen in a situation for which the party is under responsibility. When there is no occasion to anticipate, the ordinary man does not. As usually phrased, there is no duty to anticipate against dangers not reasonably to be foreseen. This does not mean that a particular danger in a particular form should be foreseen as probably involved in the situation. If there is some general probability of danger, the duty to anticipate it and give it attention arises according to the circumstances. Anticipation is not confined to expectation. The circumstances such as the extent, frequency and seriousness of the danger and the practical expediency of action to overcome or minimize it bear on the ordinary man's action in this respect.

Consideration followed by protective action according as the danger is seen to be serious and measures to meet it are available is called for as the practice of ordinary men in providing for the safety of others towards whom there is the legal duty to use care. The infrequency of the danger or even the lack of its previous occurrence in the experience of the party charged is not a decisive test. He is chargeable with the common knowledge about such things and the knowledge the ordinary man would take care to acquire. When a danger, though unusual, is fraught with serious consequences, there is reason for saying ordinary men might anticipate it to manifest itself now and then, though not expecting it in a given instance, and so adopt some measures or system adapted to overcome it. The probable occasional outbreak of the danger makes it a present and existing menace.

"Whenever one person supplies goods or machinery or the like, for the purpose of their being used by another person under circumstances that every one of ordinary sense would, if he thought, recognize at once that unless he used ordinary care and skill with regard to the condition of the thing supplied or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying the thing." *Heaven* v. *Pender*, L. R. 11 Q. B. D. 503.

There is no conflict in the cases in this state in which the duty to anticipate has been considered. In some, such as *Gage* v. *Railroad*, 77 N. H. 289; *Shea* v. *Railroad*, 69 N. H. 361; *Hodges* v. *Company*, *ante*, 101; and *Zajac* v. *Company*, *ante*, 257, evidence tending to show the existence of the duty was found lacking; while in others, such as *Fisher* v. *Railroad*, 75 N. H. 184; *Blaisdell* v. *Company*, 75 N. H. 497; *Bassett* v. *Dodge*, 77 N. H. 602; *True* v. *Creamery*, 72 N. H. 154; and *Ela* v. *Company*, 71 N. H. 1, such evidence appeared.

Whether there was evidence here of the duty to anticipate depends on how the mouse got into the food. This must be shown, since neither the existence of the duty nor the failure to perform it as a cause of the injury can be found from conjecture. It is not necessary to consider whether the unexplained presence of the mouse in the food would justify a finding that it was caused by the failure to anticipate it and guard against it. If the doctrine of *res ipsa loquitur* may be invoked in some cases, there is no occasion

to rely on it here. Analysis of the evidence shows that a finding of what happened might be made without conjecture.

The mouse was in some roast chicken dressing prepared by the defendants' cook and containing various ingredients, including bread crumbs. The bread was in loaves and kept in a covered can. By his usual practice the cook broke a loaf into crumbs with his hands, the crumbs dropping into a pan, after which some ham and bacon sliced and then steamed were mixed with the crumbs. Oil and seasoning were added, followed by baking the dressing for about half an hour. It was after that kept in a covered receptacle containing hot water so it would remain warm and moist until served. When the waiter had an order, the cook removed the lid of the receptacle and with a spoon took out the dressing and put it on a platter for separate service for each customer. The waiter then put chicken on the dressing and took the platter to the customer's table.

With consideration given to the timidity of mice when persons are present and active as a matter of common knowledge, in the process of cooking the dressing and in the subsequent service of it the evidence shows such exclusive control by the cook and waiter and isolation from external contacts and invasions as to justify an inference that during the process the mouse did not find its way into the dressing. This makes it a reasonable rather than conjectural deduction that it got into the dressing in its making. In this the process was such a continuous and exclusive activity of the cook as to eliminate conjecture from a finding that the mouse was inactive if not inanimate when made a part of the dressing, and from the further finding that however it then got into the dressing, it had such corporeal attributes of form, size and color that its entrance into or presence in the dressing would not have been elusive. Whether the mouse was imbedded in the bread which passed through the cook's hands while broken into crumbs or whether its entrance into the dressing came about in some other way during its preparation need not be definitely determined, since the evidence tends to show due care would have disclosed it however it gained entrance. The conclusion that keeping ordinary watch and giving ordinary attention while the dressing was made in its usual way would have disclosed the presence of the mouse may therefore reasonably be drawn.

If the mouse got into the dressing during its preparation, it then remains to be considered if the defendants can be found in fault for

not anticipating it. The test of liability is not whether the particular mouse which entered the dressing was to be looked out for, but whether there was such a chance of improper things entering it that ordinary men would be on the watch for them. It is common knowledge that foreign substances at times do get into food and that it is important that food be fit to eat. It may be assumed that the usual way of making the dressing by breaking the bread into crumbs and preparing and adding the other ingredients was for culinary rather than inspective purposes. Yet at the same time they were largely acts of inspective force, simple, practical and efficient. The situation presents a case where an ordinary method of doing the work furnished protection. While this is not alone enough to prove negligence (*Zajac* v. *Company, supra*), it is nevertheless evidence bearing on the question of anticipation in showing inspection to be feasible and practical. Evidence that available inspection is effective tends to show ordinary men would use it. It is also common knowledge that customers of a restaurant do not as a matter of practice inspect their food, nor are they expected to do so. From these matters of common knowledge, and from these inferences, if made, a jury might properly find the defendants should have anticipated the danger and thereupon maintained a reasonable inspection so the mouse would have been discovered.

Whether reasonable inspection would disclose the harmful substance is well illustrated in the difference between the two cases of *Ash* v. *Company*, 231 Mass. 86, and *Tonsman* v. *Greenglass*, 248 Mass. 275. In the former case a tack concealed in blueberry pie was of such color, size and shape "that it would naturally escape the most careful scrutiny." In the latter case a thin piece of iron half an inch square imbedded in a loaf of bread was of such size and shape that its presence might be found due to negligent inspection in making the bread.

In *Blaisdell* v. *Company, supra*, the court says: "In view of the extreme hazard which would be created by the presence of such an explosive [as dynamite] in the ground which a gang of men were removing with pick and shovel, it cannot be said as matter of law that it was not the master's duty to use every precaution human ingenuity could suggest, or else warn the workmen of the danger. *Mather* v. *Rillston*, 156 U. S. 391. Since it could be found the master did not act up to this standard, the question of its fault was properly submitted to the jury. 'There might be a liability on the part of the defendant . . . even though neither he nor his superintendent

knew or had reason to believe that there was an unexploded charge of dynamite there. It was enough to create a liability if they knew, or ought to have known, of such a possibility or probability that some of the dynamite remained unexploded as to make an inspection necessary for the safety of the workmen.' *Hooe* v. *Railway,* 187 Mass. 67.'' If the dead mouse be compared with the dynamite, the dressing with the ground, the common knowledge that alien substances find their way into food with the there defendant's knowledge that the ground had contained dynamite, and the innocent act of eating with the innocent act of digging, the cases show an exact and uniform parallel.

The suggestion that when the dressing was prepared the parties were strangers is without force. It was as much the duty to use care before as after customers entered the restaurant in the preparation of their food, since they were entitled to have food so prepared. The relation established the duty of due care in all the defendants did in such preparation, whenever they did it and regardless of the time the relation was entered into. The duty to serve food prepared with due care and the duty to use such care in preparing food served are one and the same.

Whether in some other aspect of the case negligence may be inferred need not be considered. So far as concerns evidence on which liability may be predicated, any ground the evidence supports meets the exception in that respect. The motion for a directed verdict was made generally, and if upon any view of the case the motion was properly denied, it fails. *Janvrin* v. *Powers,* 79 N. H. 44.

On the ground that there can be no recovery for the results of fright caused by negligence when there is no immediate physical injury, the exception is not to be sustained.

The rule invoked has not been passed upon in this state. One sustaining bodily injury through negligence may recover for fear of other results as a form of mental suffering (*Walker* v. *Railroad,* 71 N. H. 271; *Prescott* v. *Robinson,* 74 N. H. 460), but no case is found where the only physical injury comes through fright as the connecting link in the chain of causation. The rule is supported in other jurisdictions on grounds open to critical consideration and, when recognized, is more or less apologized for. In Massachusetts the rule has been adopted as a policy of practical justice to prevent opening "a wide door for unjust claims" and on the theory that one "is not bound to anticipate or to guard against an injurious result which would only happen to a person of peculiar sensitiveness."

*Spade* v. *Railroad,* 168 Mass. 285. In *Homans* v. *Railway,* 180
Mass. 456, the rule is stated to be "an arbitrary exception, based
upon a notion of what is practicable." In *Driscoll* v. *Gaffey,* 207
Mass. 102, the doctrine does not apply, but recovery is given for
the results of fright, where "the injury from without is appreciable
even although it be very slight." And in *Conley* v. *Company,* 218
Mass. 238, the rule was not enforced where the immediate physical
injury was sustained in a fall consequent upon a fainting induced
by fright. In some jurisdictions the rule has been upheld on the
ground that because there can be no recovery for fright in the absence
of physical injury, there can be none for its consequences. *Mitchell*
v. *Railway,* 151 N. Y. 107; *Trigg* v. *Railway,* 74 Mo. 147. In others
an illogical transformation of a question of fact into a rule of law
by holding recovery barred by the remoteness of such damage has
been made the reason for the rule. *Ewing* v. *Railway,* 147 Pa. 40;
*Braun* v. *Craven,* 175 Ill. 401. The rule has been forcibly criticized
in *Simone* v. *Company,* 28 R. I. 186, and *Dulieu* v. *White,* L. R.
(1901) 2 K. B. D. 669. See also Sedgwick on Damages, 9th ed.,
*ss.* 43–45c.

The question is here raised only in a limited form so that decision
as to the general validity of the rule is not required. The evidence
shows conclusively that the plaintiff sustained physical suffering
at the time of the injury. Finding the mouse in her mouth made
her sick immediately and so as to require the services of a physician.
To discriminate between this and an external force such as a blow,
cut, break or wrench would be a legal refinement wholly arbitrary
and unjust. The distinction between trauma and other contacts
pertains to physiology rather than to the law. If the mouse had been
covered with prickly bristles instead of soft hair and the plaintiff's
mouth had been thereby cut, it would be a remarkable state of the
law for such a difference to test liability. It is also an arbitrary
and insufficient difference whether the bodily suffering at the time
of the injury was or was not induced by fright. In a strict sense
it was not fright at what might happen but horror at what had
happened that affected the plaintiff at the time; but conceding that,
as the word is used in this connection, fright includes any distress
of mind (*Driscoll* v. *Gaffey, supra*), we see no occasion to distinguish
between causes where the immediate injury is and where it is not
induced by fright, and the general rule of damages is here applicable,
granting there is no liability where immediate physical injury is
wholly lacking. Otherwise persons suffering from the negligence of

others would be subject to discrimination based on narrow reasons and contrary to normal principles of justice.

The character of the rule as exceptional to usual grounds of recovery properly gives it restrictive rather than enlarging application. The reasons for the rule that the results of fright are barred because fright is barred and because they are too remote are so lacking in merit and logic as to be entitled to but slight weight. On the ground of expediency more may perhaps be said in its favor. But whatever may be the force of the expediency, its scope is not to be extended beyond its reasons and requirements. The argument for the expediency seems to be that if the exception to the general rule were not made, the courts would be flooded with claims and that fraudulent ones would be encouraged because of the difficulty of disproof. This implies inability to detect fraud and means that honest claims should be barred so as to avoid the chance of success of dishonest ones. If judicial policy does go as far as this, it is only in extreme instances; and the necessity for the rule should be more urgent and insistent than appears before extending it to apply to the situation here of immediate physical injury, though without external force. Lack of external force does not warrant a bar to recovery when immediate physical injury in some form is present. When there is such injury, suspicion is not invited as a legal principle merely because external force is not also shown.

Immediate physical injury as the result of negligence being shown, whether or not induced by some form of fright, there may be recovery for subsequent mental or nervous trouble with its attendant bodily effects, whether or not produced by fright in a narrow sense or in a broad one to include emotions of disgust and shame, if negligence is proved as its cause.

The defendants excepted to the instruction in connection with damages that if liable, they were liable "for the actual effects of this occurrence upon this particular woman . . . and if the plaintiff was unduly susceptible to fright from mice, the only effect of that is to make the damages . . . all the greater." Since the plaintiff's damages were to be measured by the effects of injury to her rather than what they would be to a less susceptible or sensitive person, even although the defendants had no notice of her peculiar condition and could not have foreseen the results, the instruction was correct. *Whittemore* v. *Railroad,* 77 N. H. 61, and cases cited; *Guevin* v. *Railway,* 78 N. H. 289, 299. Whether the susceptibility is bodily, mental or nervous is immaterial as matter of law.

The exceptions to the denial of a directed verdict and to the portion of the charge relating to damages are overruled.

II. During the trial a witness was allowed subject to the defendants' exception to testify to a talk between the plaintiff and one of the defendants about a compromise of her claim. The testimony was that "he wanted to know if she would make a settlement with him . . . and they spoke of a compromise for fifteen hundred dollars, and he said he could n't do anything about that until he saw his partner." The answer was responsive to the question-by which the witness was asked what this defendant said to the plaintiff on a certain occasion about liability. If the significance of the question was not impressed on the court, its answer made it apparent, and plaintiff's counsel cannot be found as surprised by it. No withdrawal of the testimony was suggested. The language of the answer permitted the inference that the parties agreed on a compromise, subject to the consent of the absent defendant. The claim that it was offered only to show the defendants' knowledge of the plaintiff's injury is met by the fact that the record shows no such limitation. Such knowledge was immaterial and not in issue. If it had been, the evidence was no more competent for such a special purpose than to show a general admission of liability. *Rideout* v. *Newton*, 17 N. H. 71.

The incompetency of an offer of compromise as evidence and its prejudicial effect as a matter of law are established by an unbroken and uniform line of authorities. *Sanborn* v. *Neilson*, 4 N. H. 501; *Hamblett* v. *Hamblett*, 6 N. H. 333; *Rideout* v. *Newton, supra; Downer* v. *Button*, 26 N. H. 338; *Bartlett* v. *Hoyt*, 33 N. H. 151; *Eastman* v. *Company*, 44 N. H. 143; *Perkins* v. *Railroad*, 44 N. H. 223; *Field* v. *Tenney*, 47 N. H. 513; *Plummer* v. *Currier*, 52 N. H. 287; *Grimes* v. *Keene*, 52 N. H. 330; *Colburn* v. *Groton*, 66 N. H. 151; *Jenness* v. *Jones*, 68 N. H. 475; *Greenfield* v. *Kennett*, 69 N. H. 419; *Smith* v. *Morrill*, 71 N. H. 409; *Altman* v. *Railway*, 75 N. H. 573; *White Mountain &c. Co.* v. *Murphy*, 78 N. H. 398. This exception is sustained.

III. Since a retrial is necessary, the plaintiff's exception to the withdrawal of the count for breach of warranty is properly considered. No claim is made of evidence from which any express warranty could be found.

The sales act (Laws 1923, c. 122) provides by Section 15 in part as follows:

"Subject to the provisions of this act and of any statute in that

behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

" (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. . . .

" (6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

Without considering the technical point whether one served with food at a restaurant obtains the right to destroy it rather than acquires title to it (*Merrill* v. *Hodson*, 88 Conn. 314), it is a well settled rule that when service is the predominant, and transfer of title to personal property the incidental, feature of a transaction, the transaction is not a sale of goods within the application of statutes relating to sales. *Pitkin* v. *Noyes*, 48 N. H. 294; *Prescott* v. *Locke*, 51 N. H. 94. The business of innkeepers and restaurant keepers is regarded as of service only, and not of selling what is furnished. Such things as food to eat, water to wash with and the like are ancillary to the main feature of service. *Parker* v. *Flint*, 12 Mod. 254; *Saunderson* v. *Rowles*, 4 Burr. 2064; *Merrill* v. *Hodson*, *supra*. The contrary authority in New York (*Temple* v. *Keeler*, 144 N. E. Rep. 635) is not approved. The statute is therefore inapplicable.

In considering the claimed common law duty of an absolute character to serve fit food, the confusing conflict in the cases in other jurisdictions shows the law to be generally unsettled. In *Friend* v. *Company*, 231 Mass. 65, the court, one of the justices dissenting, adopted absolute liability on the theory of an implied warranty. In *Temple* v. *Keeler*, *supra*, there is a similar ruling, furnishing food to a customer at a restaurant being held to constitute a sale and the doctrine of an implied warranty being invoked. In *Sheffer* v. *Willoughby*, 163 Ill. 518, and *Merrill* v. *Hodson*, *supra*, a contrary result is reached. In *Bigelow* v. *Railroad*, 110 Me. 105, it is held there is no warranty as to food served but not prepared.

The fiction of a warranty implied by law when in fact there is none appears to account for much of the conflict in the cases. It is not

helpful in determining the question, without considering the reasons on which it is based. Implications arising from probabilities deserve attention. When they are contrary to or without probability, they tend to promote confusion of thought. Here no agreement that all food-served by the defendants was fit to eat was made nor is there any evidence they contemplated it. "A contract implied by law . . . rests upon no evidence. It has no actual existence; it is simply a mythical creation of the law. The law says it shall be taken that there was a promise, when, in point of fact, there was none. Of course, this is not good logic, for the obvious and sufficient reason that it is not true. It is a legal fiction, resting wholly for its support on a plain legal obligation, and a plain legal right. If it were true, it would not be a fiction . . . The common law supplies no action of *duty*, as it does of assumpsit and trespass; and hence the somewhat awkward contrivance of this fiction to apply the remedy of assumpsit where there is no true contract, and no promise to support it." *Sceva* v. *True*, 53 N. H. 627, 632. In the development of the law which has brought about simple pleading and convenient procedure, the necessity of legal fictions and technicalities to promote justice has increasingly diminished and indirection has largely yielded to direction.

The real question is whether a restaurant keeper is under legal obligation to serve only fit food to his customers, beyond his obligation to use due care in such regard. Is he under liability as though he had so insured it? If he is, it is because of some reason for a departure from the present policy of the law against absolute liability. "Everything that a man can bring on his land is capable of escaping, — against his will, and without his fault, with or without assistance, in some form, . . . changed or unchanged by . . . nature or art, — and of doing damage after its escape. Moreover, if there is a legal principle that makes a man liable for the natural consequences of the escape of things which he brings on his land, the application of such a principle cannot be limited to those things: it must be applied to all his acts that disturb the original order of creation; or, at least, to all things which he undertakes to possess or control anywhere, and which were not used and enjoyed in what is called the natural or primitive condition of mankind, whatever that may have been. This is going back a long way for a standard of legal rights, and adopting an arbitrary test of responsibility that confounds all degrees of danger, pays no heed to the essential elements of actual fault, puts a clog upon natural and reasonably

necessary uses of matter, and tends to embarrass and obstruct much of the work which it seems to be man's duty carefully to do." *Brown v. Collins*, 53 N. H. 442, 448. "But as to most of the other relations [than those specified] which bring persons together, it is now held to be the duty of everyone, no matter how the relation is created, to do what the ordinary man would have done in his situation." *Kambour* v. *Railroad*, 77 N. H. 33, 46. If damage results although such measure of conduct is followed, liability is not imposed except in a few special situations.

This is the law as applied to torts. As to contracts there is no reason why the same principle of judicial policy should not apply. While there is admitted liability for not doing what a contract calls for either expressly, or by implication, when the implication is of fact, and while equitable principles embraced under the heading of quasi-contracts and common law rules give rights arising out of contractual relations, the law does not hold the contract in itself as binding the parties to do things not provided or in fact contemplated by it. The obligation to use due care in the performance of a contract arises from the relation the contract creates and is independent rather than a part of it. For practical purposes it is usually not of much consequence whether the breach of the duty is called a tort or a breach of an implied term of the contract, and the law is more or less indifferent whether action is brought in tort or assumpsit. But that the obligation arises from the relation and not as an implied term of the contract is shown by the refusal of the law to permit express terms to nullify the effect of the obligation. If one contracts for exemption from liability for the consequences of negligence in the performance of a contract, he is nevertheless liable, because he cannot alter the law which so holds him. *Peerless &c. Co.* v. *Railroad*, 73 N. H. 328; see also *Dustin* v. *Curtis*, 74 N. H. 266. The fallacy of considering such rules as implied terms when the contrary is the fact thus becomes apparent. The implied warranty of title in a sale is an implication of fact, since an express term by which only such title as the vendor has is transferred overcomes it and relieves from liability. Since rules of law called implications are not based upon the agreement or understanding of the parties, the reason for calling them so must be fictitious. The historical reasons once justifying the fiction no longer do so.

Except in construing the sales act, aid by passing on the character of the relation here appearing as a service of entertainment rather than as a sale of property is not given. It merely begs the question

to call it a service. The argument for the rule of absolute liability that it is important food should be fit to eat and the customer expects it to be, relies on the restaurant keeper for it to be, and has only limited opportunity to inspect and examine, is rational and to be weighed. It may be said on the other hand that a large part of the food either as served or in its contents is not prepared by the restaurant keeper and he in turn has to take for granted in some measure what he buys. Drawing a distinction between what he may and may not readily examine obviously invites such difficulties of application as to make such a test an impractical rule. If the restaurant keeper has used due care in furnishing a safe place in which and safe equipment with which to eat, admittedly the limit of his duty in such respect, it is not reasonably consistent to hold that in furnishing food he shall be under a greater duty than to use due care it is fit to eat. The limited opportunity to inspect and examine food which a customer at a restaurant has may relieve him from doing it in the exercise of care and may affect the restaurant keeper's care, but that it should be enough to warrant an exception to a general principle does not follow. Due care may call for the restaurant keeper to use every practical precaution available, but, if it is used, to throw on him the burden of mishaps not due to his fault in the ordinary sense is so contrary to principles of reasonable and practical justice as not to be done unless some overcoming principle of judicial policy invites it. No such principle suggests itself. Negligence, malice and agreement are all absent. No exceptional elements appearing making justly insufficient the protection secured by the requirement of due care generally adequate in all cases of exposure to danger encountered in the ordinary experiences of life, the trend of the law against absolute liability is to be followed. "The subject is one where too much weight should not be given to history, for the law of negligence in its present development is a very modern affair, rendering obsolete much that went before it." 29 Harv. Law Rev. 814.

By way of analogy, it may be noted that prior to the sales act there was no liability in a sale for the unfitness of an article which the purchaser might inspect, in the absence of an express warranty. *Deming* v. *Foster*, 42 N. H. 165, 174. The clauses of the sales act styled as warranties are only refutable presumptions, requiring negation of what previously required proof, and as express terms of the contract to the contrary overcome them, they create only qualified rights and partake of the qualities of warranties of fact.

The act therefore manifests no legislative policy of absolute liability for the quality of goods sold.

The exception is overruled.

IV. The occasion for a retrial with the probability that the evidence on the issue will be substantially the same as at the trial already had makes it proper to consider the defendants' exception to the court's refusal to submit contributory negligence as an issue. The record discloses no evidence from which it can be found the plaintiff was thus negligent. It being common knowledge that customers at a restaurant expect the food to be fit to eat without first inspecting it, there is no evidence tending to show that the plaintiff on the occasion of her visit had anything called to her notice which would have induced an ordinary person in her place to inspect her food in such a way that the mouse would have been discovered before she partook of the dressing containing it. The defendants have pointed out no evidence tending to show the plaintiff was put on her guard and called upon to suspect and then inspect her food to see if it was fit to eat. This exception is accordingly overruled.

V. Consideration of the remaining exceptions appears unnecessary. Either they are waived or decision as to them is not likely to affect the retrial.

*Plaintiff's exception overruled.*

*Defendants' exceptions sustained in part, and in part overruled: verdict set aside.*

All concurred.