## H. F. COLBURN *vs.* CHARLES MORRILL.

Essex.   Nov. 4, 1874. — March 31, 1875.   AMES & DEVENS, JJ., absent.

In an action to recover rent the evidence of the plaintiff tended to prove an oral
    lease to the defendant of three rooms for an entire rent.  The defendant offered
    to prove that the lease also included a fourth room ; that he occupied the premises
    and paid the rent regularly until the plaintiff came to the house in a state of intox-
    ication, removed the plaintiff's goods from the fourth room, locked the door and also
    the door of one of the other rooms, said that he should not allow a certain other
    person to enter the tenement, forbade the defendant's wife to enter the rooms
    which he had locked, and carried away the keys which he had not returned.  The
    presiding judge ruled that the evidence offered by the defendant constituted no
    defence to the action.  *Held,* that the ruling was erroneous, and that the evidence
    would warrant the jury in finding a partial eviction.

Eviction of a tenant by his landlord from a part of the premises demised under an
    oral lease for one entire rent is a bar to any claim for rent under the lease during
    the continuance of the eviction.

CONTRACT for rent.   Trial in the Superior Court before *Lord,*
J., who allowed a bill of exceptions in substance as follows :

The plaintiff offered evidence tending to show that on Feb-
ruary 6, 1868, he leased orally to the defendant three rooms,
in a certain building in Lawrence, consisting of a front room, bed-
room, and kitchen, for $10 per month ; that the defendant went
into the occupancy of the rooms, and paid the rent in full each
month as it accrued up to May 6, 1868 ; that the defendant re-
mained in the occupancy of the rooms under the oral lease until
October 6, 1868, when he left, owing the plaintiff for five months'
rent ; and that the plaintiff had never terminated his tenancy in
the rooms.   He further testified that he took certain goods out
of the attic, which he testified that he never let to the tenant ;
that when he took the key of the attic, he took the key of the
front outer door of the house for a special purpose and subse-
quently returned it, and denied that he locked the front room or
ever in any mode interfered with the use of it by the tenant.

The defendant's counsel, in opening, stated that the defence to
the plaintiff's suit rested on the following facts :  On February 6,
1868, he leased orally of the plaintiff a tenement consisting of
the said three rooms and an attic room, for $10 per month ; soon
after went into possession and occupancy of the four rooms, and
paid the rent for the same monthly, at the rate of $10 per month

up to May 6 following. On May 9, three days after he paid the previous month's rent, the plaintiff came into the tenement, where was then only the defendant's wife, and told her that he should not allow a Mrs. Jenkins to come into the tenement; that she replied that she must have her as she was soon to be confined; and then he took the defendant's goods and effects out of the attic room and placed them in the attic entry, and locked the doors to the attic and front room, forbade the defendant's wife to enter the same, and carried away with him the keys, and ever after kept them; when the plaintiff came in he was in a state of intoxication, and the defendant's wife was afraid of him and could not get him out of the house, he remaining from nine o'clock A. M. or thereabouts till nearly noon. The defendant had two conversations with him very soon after, and asked him why he had locked up the attic and front rooms in his tenement, and the plaintiff replied that he would have no cooking in those rooms. The defendant replied that he was not going to have any cooking in those rooms; that his wife was soon to be confined, and that her nurse would sleep in the front room for a short time; that he hired those rooms with the others, and must have them, and told the plaintiff that if he refused to restore those rooms to him, he should refuse to pay for the two he was then occupying till he did; and that he refused to allow them to occupy the said two rooms. The defendant left the tenement on September 6, 1868, and, owing to the continued sickness of his wife and child, could not remove from the premises before.

The defendant's counsel contended that these facts, if proved, would amount to an eviction of the defendant from a portion of the leased premises, and that an eviction from a part of the leased premises would suspend the whole rent, until such time as the plaintiff should lawfully terminate his tenancy in the premises; that the defendant's tenancy in the premises never having been terminated, he was rightfully in possession of the same on the day he left under his original contract of hiring, and that an eviction from a portion of the leased premises would suspend the rent during the whole time claimed in the plaintiff's writ.

The judge ruled that, if all the facts set forth in the defendant's opening, and such inferences as might be legally drawn from them, were true, they would constitute no defence to the

plaintiff's suit. The jury found for the plaintiff for the full amount of his claim, and the defendant alleged exceptions.

*J. C. Sanborn*, for the defendant.

*W. S. Knox*, for the plaintiff.

ENDICOTT, J. The evidence of the plaintiff tended to prove that he made an oral lease of three rooms to the defendant for an entire rent. The defendant offered to prove that in addition to the three rooms he also hired an attic room. As the case is presented it is immaterial whether the attic room was included in the agreement, as both parties agree that the front room, from which the defendant says he was evicted, was part of the premises let to the defendant. There was evidence offered by the defendant from which the jury might have found that he was evicted from the front room, which was part of the premises, and from the attic room, which he contends was also a part of the same.

It was long since settled in England that the eviction of a tenant by a landlord from a part of the demised premises suspends the entire rent so long as the eviction continues. *Salmon* v. *Smith*, 1 Saund. 204, n. 2. *Morrison* v. *Chadwick*, 7 C. B. 266, 283. *Upton* v. *Townend*, 17 C. B. 30. The question was left open in *Shumway* v. *Collins*, 6 Gray, 227 ; and in *Fuller* v. *Ruby*, 10 Gray, 285, the court declined to express an opinion on the point, it not being properly before them. But in *Leishman* v. *White*, 1 Allen, 489, it was held that a tenant evicted by a landlord from part of the demised premises was not liable for rent or for use and occupation of the residue. The landlord cannot " so apportion his own wrong as to enforce the lessee to pay anything for the residue." *Hodgkins* v. *Robson*, 1 Vent. 276, 277. *Royce* v. *Guggenheim*, 106 Mass. 201. *Christopher* v. *Austin*, 11 N. Y. 216. The fact that a tenant has no written lease does not affect his rights in this respect.

We are of opinion, therefore, that the learned judge should have submitted the case to the jury upon the question whether the defendant was evicted by the plaintiff from a portion of the premises which he occupied under his agreement.

*Exceptions sustained.*