THOMAS G. FILLEBROWN *vs.* REUBEN S. HOAR & another

Middlesex.   Jan. 10. — June 29, 1878.   AMES & LORD, JJ., absent.

The partial eviction of a tenant from the demised premises, by a third person having a paramount title, is a bar, *pro tanto*, to the recovery of the rent reserved, such rent being apportionable.

Where there is an agreement between the lessor and lessee that the latter may make repairs on the demised premises, the cost thereof to be applied in payment of the rent reserved, if the lessee makes such repairs, and is afterwards evicted by the lessor on the ground that there has been a breach of the covenant to pay rent, he is entitled to have the value of the repairs deducted from the rent due at the time of the eviction, although they have not been allowed by the lessor, and there has not been a settlement of their value made between the lessor and lessee.

In an action for the illegal eviction of the plaintiff, his family and goods, from premises demised to him by the defendant, he may recover for the injury to his feelings; but not for injury to his health resulting from exposure in going, two days afterwards, from the premises to another place, or from attending his family when ill from the effects of the eviction, or from grief at their illness.

On the issue of the injury to the plaintiff's feelings, in an action for the eviction of himself, his family and goods, from premises demised to him by the defendant, evidence of the illness of members of his family, subsequent to the eviction, is inadmissible.

TORT against Reuben S. Hoar and Wallace Handley, for breaking and entering the plaintiff's close and ejecting his goods and family. Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows :

The close in question consisted of a house, barn and land, which the plaintiff occupied as the tenant of the defendant Hoar, under a written lease under seal, for the term of one year from May 1, 1875, which provided that the lessee should pay $48 a year rent, in equal quarterly payments, beginning on August 1, 1875; and that in case of a breach of any of the covenants to be observed on the part of the lessee, the lessor might, without any notice or demand, enter upon the premises and thereby determine the estate, and expel and remove, forcibly if necessary, the lessee and those claiming under him, and their effects.

It appeared in evidence that on April 3, 1876, the defendants went to the house of the plaintiff, and, the plaintiff being absent from home, set out of the house, into the yard and barn, the plaintiff's furniture; that while they were so doing, the plaintiff's wife and children left the house upon request of the defend

ants, no force being used, and walked about one half mile to a depot and took the cars, and went some four or five miles to the house of the plaintiff's father, where they remained; that the plaintiff knew nothing of this act of the defendants until the evening of April 5, when he arrived home and found his goods and family out, and went a few rods to a neighbor's house and stayed over night, and on the morning of April 6 went to his father's house, where his family was, and there remained.

The defendants justified their acts on the ground of a breach of the covenants in the lease to pay rent, contending that there was due and unpaid six dollars on the second quarter and the whole of the third quarter, amounting in all to $18.

The plaintiff contended, and offered evidence tending to show, that, soon after the commencement of the term, he was evicted by paramount title, by one Floyd, of a portion of the demised premises, which he had planted, and that on that account he was entitled to a proportionate diminution of the rent; that he had made certain repairs upon the premises, under an agreement with the defendant Hoar that the fair value thereof should be allowed in the payment of the rent, and that in these two ways, together with the money paid, he had paid all the rent, and none was due on April 3; but it appeared that there had been no presentation of such repairs to the lessor, and no settlement, or allowance, or application to the rent thereof, and that the lessor denied the repairs, and the amount thereof, and any agreement to allow for them, and any knowledge that any had been made.

The plaintiff claimed damage for the removal of the furniture, and for injuries and sickness of himself, wife and children, contending that his wife and children were made sick by the exposure after leaving the house, and that he became sick some days after reaching home, by reason of the eviction. The defendant Handley only acted with Hoar at his request, to assist him.

The plaintiff's counsel were allowed, against the defendant's objections, to inquire of the plaintiff's wife, what was the effect of the act of the defendants upon her health and the health of her infant child, to which she answered that they took cold and were sick; and also to inquire of the plaintiff, "What was your health on Thursday morning, April 6, and after, compared to what it was when you went away from home on the morning of

April 3 ? " to which he answered, " Very miserable, not able to sit up ; " and also whether the children of the plaintiff had shoes, and whether he brought home shoes for them on April 6, to which he answered that they had no shoes ; and also, what was the state of the health of the other minor children of the plaintiff after the lessor took possession on April 3. This evidence was offered by the plaintiff only for the purpose of showing injuries to the plaintiff himself, through his feelings or otherwise, and was admitted only for that purpose, and the jury were so instructed.

The defendants asked the judge to instruct the jury as follows :

" 1. If, at the time of the entry by the lessor to regain possession of the estate, any rent was due and unpaid, the lessor had the right to enter and dispossess the lessee and take possession of the premises.

" 2. If the lessee had a claim against the lessor for repairs on the premises, equal to the amount of rent due, that would not take away the lessor's right to enter as aforesaid, unless it was agreed between the lessor and lessee that such claim should be in payment of the rent under the lease to the extent of the amount due thereon, and unless there was enough due thereon to counterbalance the rent due.

" 3. Eviction of a portion of the premises, under a paramount title not acquired under the lessor, does not relieve the lessee from the payment of rent according to his covenants, nor does it authorize an apportionment of the rent.

" 4. If, when the rent came due in February, the lessor refused to allow anything for the repairs done by the lessee on the premises, then the lessor would have the right under the lease to enter and regain possession of the premises, although the lessee had a claim against the lessor for repairs of the premises, equal to the amount of rent due, which he could enforce against the lessor in an action at law.

" 5. If the third quarter's rent was due and payable some days before the day when the lessor entered and took possession, then the lessor had the right to enter and terminate the lease, even though the lessee had a claim for a larger amount for repairs done on the premises, and even though the lessor had agreed

with the lessee that if he would do the repairs he would allow therefor on the rent, provided there had been no settlement between the parties, and no allowance therefor towards the rent.

" 6. The plaintiff, not being present, cannot claim for any injury to his person while returning home, or by the eviction.

" 7. The plaintiff cannot recover for any injury to the persons of his wife and family, or to their feelings."

Of these instructions, the judge gave the first and seventh, and declined to give the second, third, fourth and fifth, and upon the sixth instructed the jury that, if they could trace the injuries and sickness of the plaintiff to the acts of the defendants as the cause, the defendants would be liable therefor.

The judge also instructed the jury that the plaintiff was entitled to a proportionate diminution of his rent by reason of the partial eviction by paramount title, if they found such eviction, and, in calculating the rent due at the time of final eviction, they might make an allowance for such partial eviction; that if they found that the lessor agreed with the lessee that he might make repairs to be allowed as payment of rent, and that such repairs had been made by the lessee, they might deduct the amount such repairs were shown to be reasonably worth, from the rent otherwise due at the time of the final eviction, although there had been no allowance thereof by the lessor, and no settlement thereof between lessor and lessee.

The jury returned a verdict for the plaintiff in the sum of $222.91 ; and the defendants alleged exceptions.

*G. Stevens*, for the defendants.

*F. A. Worcester*, for the plaintiff.

SOULE, J. The eviction of a tenant from the demised premises, either by the landlord or by title paramount, is a bar to the recovery of rent reserved. *Morse* v. *Goddard*, 13 Met. 177. His eviction by the landlord from a part of the premises suspends the entire rent while the eviction continues. *Leishman* v. *White*, 1 Allen, 489. *Royce* v. *Guggenheim*, 106 Mass. 201. *Colburn* v. *Morrill*, 117 Mass. 262. His eviction by title paramount from a part of the premises is a bar *pro tanto* only, the rent being apportionable. 3 Kent Com. (12th ed.) 464. *Fitchburg Cotton Manuf. Co.* v. *Melven*, 15 Mass. 268. The ruling on this part of the case was therefore correct.

In covenanting to pay rent according to the terms of the lease, the plaintiff undertook to pay it in money, but it was competent for the parties to agree to receive and pay any part of it in any other way; and if the plaintiff did service, or furnished labor and materials for the defendant Hoar, under an agreement that the cost thereof should apply in payment of rent, the service, when rendered, or the labor and materials, when furnished, were, at once, payment of rent *pro tanto*. If their value was equal to the accrued rent when the lessor entered the leased premises, his entry was unlawful, because the rent had been paid, and there had been no breach of covenant by the plaintiff. If, however, the plaintiff had an unsettled account against the lessor, for services rendered, labor and materials furnished, or goods sold, without any agreement that it should be applied in payment of the rent, the entry was not unlawful, because such account would not support a plea of payment or satisfaction in an action for the rent, though it might be availed of by way of set-off, or in proceedings in equity to prevent the lessor from entering and expelling the lessee. *Morrill* v. *De la Granja*, 99 Mass. 383. If the repairs were made under an agreement that the reasonable cost should be applied on the rent, it was not necessary that they should be approved, and the cost settled and applied by the parties, before they could be regarded as payment. *Dallman* v. *King*, 4 Bing. N. C. 105. The exceptions to the refusal of the learned judge to give the instructions asked for in the fourth and fifth requests cannot therefore be sustained. If the fourth request had been complied with, the jury would have been permitted to find that rent was in arrear, because the lessor had refused to allow the cost of repairs made by the plaintiff under an agreement that it should apply on the rent. If the fifth request had been complied with, they would have been permitted to find that rent was in arrear, though the cost of repairs made under such agreement exceeded the amount of accrued rent, because the lessor made his entry before formally allowing and applying the cost to the rent.

The instruction asked for in the second request contains a correct statement of law, and an unqualified refusal to give it would have been good ground for exception. We think, however, that the instruction given sufficiently protected the rights of the de-

fendants on the point in question. The whole charge is not recited in the bill of exceptions,. and we must assume that the jury were properly instructed as to the right of the defendants to enter the premises if the rent was in arrear, and that the part of the charge which is recited was given by way of informing them as to what the plaintiff must show in order to establish the fact that the cost of the repairs made by him ought to be applied in payment of rent. Understood in this way, it is clear that the defendants were as fully protected by it as they would have been by the adoption, in connection with it, of the language of the request.

We are of opinion that the instructions given regarding the damages to be recovered were not so carefully guarded as the case required. It is true that if the defendant entered on the premises unlawfully, and expelled the family of the plaintiff, he did it wilfully, or with such gross carelessness of the rights of the plaintiff that he is bound to make full compensation. Such compensation would include not only payment for injury to property, but for the wound inflicted on the feelings of the plaintiff. *Meagher* v. *Driscoll*, 99 Mass. 281. But the jury should have been instructed that the plaintiff was not entitled to recover for any injury to his health which resulted from any exposure in journeying from the premises to his father's house, or from attending his family when ill, nor from grief that they were ill; and that the recovery, by reason of the effect of the eviction on him personally, must be limited to the injury to his feelings by reason of the indignity and insult of being unlawfully turned out of his home with his family.

The evidence admitted as to the subsequent illness of the members of his family was incompetent. It was no part of the injury for which damages were recoverable in this action, and it was no part of the act which wounded the feelings of the plaintiff. Its tendency was to enhance the amount of damages in the verdict, and the exception to its admission was well taken.

*Exceptions sustained.*