ANDREW G. STILES *vs.* MUNICIPAL COUNCIL OF THE CITY
OF LOWELL.

SAME *vs.* SAME.

Middlesex.    January 13, 14, 1919. — June 19, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Municipal Corporations,* Officers and agents.  *Civil Service.  Actionable Tort.*
   *Lowell.  Negligence,* Of municipal officers.  *Damages,* In tort.  *Evidence,*
   Competency.

The members of the municipal council of the city of Lowell, in removing an officer
   whom the charter of the city empowers them to remove under the laws regulat-
   ing the civil service, perform an executive or administrative act which in this
   particular must be performed in a judicial manner.
The cloak of office does not protect executive or administrative officers who inter-
   fere with rights of individuals in ways not authorized by law, but they are liable
   personally for such wrongful interference.
A majority of the municipal council of Lowell, in removing from office the city
   treasurer and tax collector, failed to notify him of their proposed action and to
   furnish him with a copy of the reasons which they contended constituted just
   cause for removal.  *Held,* that the members who constituted such majority
   acted without authority in law and without jurisdiction and were liable per-
   sonally for damage caused to such officer by their wrongful acts.
St. 1911, c. 645, § 40, relating to the removal by the municipal council of Lowell of
   certain city officers, does not delegate judicial power to the council.
The city treasurer and tax collector of Lowell, after his removal as above described,
   successfully prosecuted mandamus proceedings for reinstatement and the final
   order of the court therein awarded him costs.  Thereafter he brought an action
   of tort to enforce against the majority of the council their personal liability, in
   which it was *held,* that he was entitled to have considered as an element of his
   damages the amounts reasonably paid by him for counsel fees in procuring
   reinstatement to office.
At the trial of the action of tort above described, it appeared that, after the rein-
   statement of the plaintiff in office following the mandamus proceedings, the
   municipal council by vote required of him a bond with a surety company as a
   surety, conditioned upon the faithful performance of his office, and that the
   plaintiff was unable to secure such a bond owing to the incidents attendant
   upon the litigation, so that he was compelled to resign his office.  His salary
   was paid in full to the time of his resignation.  He was unable to obtain more
   lucrative employment elsewhere.  *Held,* that the plaintiff was entitled to have
   the jury consider as an element of his damages the loss he sustained by reason
   of his being thus compelled to resign and being unable to obtain more lucrative
   employment elsewhere.
At the trial of the action above described, testimony of agents of various bonding

companies, tending to show that the refusal of the companies to furnish a bond·
to the plaintiff was due to the incidents connected with the litigation attendant
upon the plaintiff's removal and reinstatement, was competent.

At the trial of the action above described, the plaintiff was entitled to have the
jury consider as an element of his damage such mental suffering on his part as
was a natural and proximate result of the wrongful acts of the defendants.

Good faith and absence of malice in the perpetration of the wrong to the plaintiff
were held to constitute no defence in the action above described.

At the trial above described, it appeared that the defendants had contended that
they were justified in removing the plaintiff from office because he had left
large sums of the city's money on deposit with a certain bank in preference to
other banks and had failed to collect sums due to the city from that bank as
interest on daily balances. It also appeared that actions at law had been
brought against the plaintiff and the sureties on his official bond, after his
removal from the office to which he later was reinstated, for failure to collect
such interest. Subject to exceptions by the defendants, the plaintiff was
allowed to testify that he had had a conversation with one of the defendants in
which that defendant had stated that he would "get even" with the president
of the bank in question because its president had refused to honor his note,
and also to testify that he had been informed from various sources that there
was no ground for the action against him and the sureties on his bond. *Held,*
that the testimony as to the conversation with one of the defendants was ad-
missible as tending to show malice toward the plaintiff, (which-then was an
issue, although it later was withdrawn as an issue by the plaintiff,) and that
both that conversation and the other testimony of the plaintiff were admissible
as tending to refute the defendants' contention that the plaintiff's mental
suffering was caused, not by their wrongful action in removing him, but by the
controversy as to the relations between the plaintiff and the bank in question.

TWO ACTIONS OF TORT against three of the five members of the
municipal council of the city of Lowell for damages suffered by the
plaintiff when he was wrongfully removed from the office of city
treasurer and collector of taxes, the first time being on January 8,
and the second being on February 20 and March 6, 1917. Writs
dated June 23, 1917, and January 5, 1918.

In the Superior Court the actions were tried together before
*J. F. Brown,* J. It appeared that on the occasion of the vote of
the municipal council of the city of Lowell, which removed the
plaintiff on January 8, 1917, the three defendants, who con-
stituted a majority of the council, alone voted in the affirmative.
On the occasion of the votes of February 20 and March 6, 1917,
the vote of the council was unanimous. By decisions of this
court on two petitions for writs of mandamus, reported in *Thomas*
v. *Municipal Council of Lowell,* 227 Mass. 116, and *Stiles* v.
*Municipal Council of Lowell,* 229 Mass. 208, it was determined

that the removals of the plaintiff from office were wrongful. The final orders of the court, after rescripts from this court, in each of those cases awarded costs to the petitioner, the plaintiff in these actions.

After the plaintiff's reinstatement in accordance with the writ which issued upon the second petition, the municipal council ordered that the plaintiff be required to give a surety company bond in the sum of $50,000. Evidence was admitted, subject to exceptions by the defendant, to the effect that the plaintiff was unable to procure such a surety company bond because the companies did not wish to undertake the risk by reason of the legal history of the case and the political discord existing between the plaintiff and the municipal council of Lowell.

One of the contentions of the defendants in support of their action in removing the plaintiff was that the plaintiff improperly left large sums of money on deposit with the Lowell Trust Company in preference to other banks and that he had failed to collect interest due the city from that bank on daily balances.

The defendants offered to prove that all the proceedings and actions in reference to both removals of the plaintiff were on the advice of the city solicitor, both as to the mode of procedure and the form of notice and all things they did in reference to the votes of removal. This evidence was excluded subject to exceptions by the defendants.

The defendants then offered to prove that in all that they did in reference to the two removals and all things pertaining to it, they acted in good faith and on advice of the city solicitor, and that they were acting in a judicial capacity; and they excepted to a ruling of the judge excluding the above testimony. Thereupon counsel for the plaintiff stated that for the purposes of this trial the plaintiff did not contend that the defendants were actuated by any actual malice, or that there was any lack of good faith on their part.

Other material facts and evidence and the exceptions of the defendants are described in the opinion.

At the close of all the evidence, the judge denied motions of the defendants that verdicts be ordered for them. The defendants asked for the following rulings, applicable to both cases, which were refused:

"1. If the jury find that these defendants honestly and in good faith attempted to remove the plaintiff from his office, then their verdict should be for the defendants.

"2. In order to recover the plaintiff must prove by a fair preponderance of the evidence that in attempting to remove the plaintiff from office, these defendants were actuated by malice in fact.

"3. If the jury find that in attempting to remove the plaintiff from office these defendants were acting in a judicial capacity over a subject matter concerning which they had jurisdiction and that they did not exceed their jurisdiction, then these defendants are not liable although the jury find that they erred or made a mistake of judgment while acting in the above manner.

"4. That inasmuch as the defendants had the right to vote to remove the plaintiff from office, but made an honest mistake in reference to the procedure required by law, and failed to adopt and follow said procedure, then their mere failure in this respect would not make them liable in this action.

"5. If the defendants at the time they voted to remove the plaintiff from office were members of a legislative body and all that they did in attempting to remove the plaintiff was done by them as members of the said legislative body, and that the said legislative body had the jurisdiction of the removal of the plaintiff, then these defendants are not liable if they acted in good faith, although they might have erred or made a mistake in the matter of procedure.

"6. As a matter of law an act done by the defendants honestly and fairly as members of the municipal council of the city of Lowell over a subject matter entrusted to said council, would not incur any personal liability to these defendants.

"7. As a matter of law there is a presumption that the defendants were acting with a desire to conform to the law and every reasonable inference is to be drawn in support of the validity of said acts on the part of these defendants.

"8. Under the law and the charter the plaintiff was bound to file a bond, and if he was unable to do so, then he became ineligible to hold said office and no longer held any claim thereto.

"9. As a matter of law upon all the evidence these defendants cannot be held liable for any failure of the plaintiff to file a bond.

"10. As a matter of law the unsuccessful attempt made by the

municipal council to oust the plaintiff was not in law the proximate cause of the plaintiff's failure to file a bond.

"11. If the jury find that the charges filed against the plaintiff were sufficient in the opinion of the municipal council for his dismissal and said charges were proved, then the plaintiff cannot complain for relinquishing his office.

"12. As a matter of law, these defendants upon the evidence are not liable for counsel fees incurred by the plaintiff in attempting to reinstate himself in office.

"13. As a matter of law these defendants are not liable for any pain or suffering, if any, endured by the plaintiff on account of being removed by the municipal council, although these defendants voted for said removal.

"14. As a matter of law upon the evidence the plaintiff is not entitled to recover for any injury to his reputation.

"15. If the jury find that up to the time the plaintiff resigned his office he received all the salary then due him, then he is not entitled to recover in this action.

"16. If the jury find that the plaintiff was damaged, then upon the evidence and the law the plaintiff in this action is only entitled to nominal damages.

"17. If the jury find that the plaintiff resigned from his office, then he is not entitled to recover in this case.

"18. As a matter of law the plaintiff is bound by his election in bringing the mandamus proceedings and is not entitled to maintain this action.

"19. As a matter of law there is no evidence in this case that these defendants exceeded their jurisdiction in attempting to remove the plaintiff from his office.

"20. As a matter of law the plaintiff as a public officer accepted his office with the incidental power upon the part of the municipal council to remove him for just cause.

"21. That if the defendants acted in good faith in all that they did in relation to the attempted removals of the plaintiff, then they are not liable.

"22. In order to recover the plaintiff must prove by a fair preponderance of the evidence, that in voting to remove the plaintiff from office, the defendants were actuated by malice or lack of good faith.

"23. The defendants are not liable to the plaintiff because of the fact that the plaintiff failed, or was unable, to procure a bond with sureties.

"24. The plaintiff was removed from the office of city treasurer and collector of taxes by vote of the municipal council and the defendants are not liable individually for any of the act or acts of said municipal council in so voting.

"25. The plaintiff was removed from the office of city treasurer and collector of taxes by vote of the municipal council; that all members of said municipal council were present and voted; that because the defendants as members of said body, voted to remove the plaintiff from said office, does not make them liable for any damages which he suffered as a consequence of the vote of said council."

The defendants also asked for the following rulings applicable only to the second case, which were refused:

"26. That upon all the evidence the plaintiff is not entitled to recover in this action because the vote of the municipal council of February 20, 1917, removing the plaintiff from the office of city treasurer and collector of taxes, was the vote of the entire members thereof, and the defendants are not liable for any damages resulting from the vote of all the members of the municipal council.

"27. That the vote of removal was passed by the Municipal Council on February 20, 1917, and not March 6, 1917, as alleged in the plaintiff's declaration, and therefore the plaintiff is not entitled to recover."

The judge instructed the jury in each case to return a verdict for the plaintiff at least in nominal damages, and for such additional sums as they found the plaintiff had suffered by reason of the two illegal acts on the defendants' part.

The jury found for the plaintiff in the first action in the sum of $1,000, and in the second action in the sum of $1,800; and the defendants alleged exceptions.

St. 1911, c. 645, § 40, being a part of the charter of the city of Lowell, is as follows: "The municipal council shall have the power under the laws regulating the civil service to suspend or remove any executive or administrative officer or head of a sub-department it has the power to appoint, for such cause as it shall deem sufficient. The municipal council shall set forth in the

order of suspension or removal its reasons therefor: provided, that nothing contained in this section shall apply to any of the following special departments, namely, school committee, license commission, or the trustees of the public library."

St. 1904, c. 314, § 2, as amended by St. 1905, c. 243, is as follows: "The person sought to be removed, suspended, lowered or transferred shall be notified of the proposed action and shall be furnished with a copy of the reasons required to be given by section one, and shall, if he so requests in writing, be given a public hearing, and be allowed to answer the charges preferred against him either personally or by counsel. A copy of such reasons, notice and answer and of the order of removal, suspension or transfer shall be made a matter of public record: provided, however, that nothing contained in this act shall be construed to prevent temporary suspension for a period not exceeding thirty days, made without compliance with the provisions of this act and pending further action under this act."

*J. C. Reilly (J. J. Kerwin* with him,) for the defendant Morse.

*J. J. Ronan, (W. D. Regan* with him,) for the defendants Warnock and Brown.

*S. E. Qua, (A. S. Howard* with him,) for the plaintiff.

RUGG, C. J.   These are two actions of tort brought to recover damages for two attempted removals of the plaintiff, the first in January, 1917, and the second in February and March, 1917, from the office of city treasurer and collector of taxes of the city of Lowell. The defendants on those dates were three of the five members constituting the municipal council of Lowell. The municipal council of Lowell was clothed with authority to remove the city treasurer from office for such cause as it deemed sufficient, provided it proceeded in accordance with the law regulating the civil service. St. 1911, c. 645, § 40. It had no power in that regard except by following the terms of that law. The provisions of the civil service law required as essential preliminaries that reasons be specifically given in writing and that the person sought to be removed should be notified of the proposed action and furnished with a copy of reasons claimed to constitute just cause for removal. The defendants, being a majority of the municipal council, joined in going through the form of adopting orders removing the plaintiff from the office of

city treasurer without notifying him of the proposed action and without giving him any copy of reasons for removal. Therefore it has been held expressly that the orders "were a nullity and were wholly ineffectual" as attempts to remove the plaintiff from office. *Thomas* v. *Municipal Council of Lowell,* 227 Mass. 116, 119. *Stiles* v. *Municipal Council of Lowell,* 229 Mass. 208, 210. The duty of the defendants to give the notice and hearing to the plaintiff was certain and specific. The statute covered the ground completely and left nothing to the exercise of discretion. *Ransom* v. *Mayor of Boston,* 193 Mass. 537, 540.

The defendants, in passing upon the question of the removal of a city officer under civil service rules, were executive or administrative officers. If they had followed the requirements of the civil service laws in making the removal, they then would have been performing functions to some extent judicial. The power to remove an officer in the public service is in its nature executive, when considered by itself alone. *Murphy* v. *Webster,* 131 Mass. 482. When, as essential prerequisites to the exercise of that power, there must be a formulation of specific charges as grounds for removal, notice of those charges to the person to be removed, opportunity to him for a hearing, followed by a hearing and decision, then the hearing and decision partake also of the "nature of a judicial investigation." *McCarthy* v. *Emerson,* 202 Mass. 352, 354. *Driscoll* v. *Mayor of Somerville,* 213 Mass. 493, 494. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 548. *State* v. *Common Council of Superior,* 90 Wis. 612, 619. The functions of the members of the municipal council are like those of selectmen in deciding upon the qualifications of voters, which, as was said by Chief Justice Shaw, are "in this respect, to some extent judicial." *Blanchard* v. *Stearns,* 5 Met. 298, 300. Speaking with accuracy, the removal by a municipal council under these circumstances is still an executive or administrative act which must be performed in this particular in a judicial manner. See *Levangie's Case,* 228 Mass. 213.

Treating the liability of the defendants in its executive or administrative aspect, they are bound to act in accordance with the law. They acquire no authority in the premises except such as the law confers. The plaintiff had an interest in remaining in office, of which he could not be deprived except in accordance with law.

Continuance in office was valuable to him both as a means of support and as matter of reputation. *Ham* v. *Boston Board of Police,* 142 Mass. 90, 95. *Hill* v. *Mayor of Boston,* 193 Mass. 569, 575. The incumbent of an office carrying emolument has rights protected from assault by third persons, although as against the State itself his relation may be of a different nature. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 73. Personal liability attaches to executive or administrative officers who interfere with rights of individuals in ways not authorized by law. The cloak of office is no protection to them even when acting in good faith. The principle by which personal liability is fixed on field drivers for taking stray cattle except as provided by the statute, *Coffin* v. *Field,* 7 Cush. 355, on members of the board of health for killing a well horse honestly but mistakenly supposed to have glanders, *Miller* v. *Horton,* 152 Mass. 540, on selectmen and other officers when acting as members of an election or registration board in refusing to put on the voting list and to permit to vote a man entitled to vote, *Larned* v. *Wheeler,* 140 Mass. 390, on assessors for making an illegal assessment, *Stetson* v. *Kempton,* 13 Mass. 272, 283, and in general on municipal officers for acts of personal misfeasance in performance of public duty, *Moynihan* v. *Todd,* 188 Mass. 301, is controlling when the position of the defendants is considered as executive or administrative.

If the defendants' position is approached from the viewpoint of exercising the judicial faculty, the same result follows. "All inferior tribunals and magistrates . . . if they act without any jurisdiction over the subject matter; or if . . . they are guilty of an excess of jurisdiction . . . are liable in damages to the party injured by such unauthorized acts." *Piper* v. *Pearson,* 2 Gray, 120, 122. *Clarke* v. *May,* 2 Gray, 410. *Doggett* v. *Cook,* 11 Cush. 262. *Sullivan* v. *Jones,* 2 Gray, 570. *Kelly* v. *Bemis,* 4 Gray, 83. *Kendall* v. *Powers,* 4 Met. 553. *Brewer* v. *Casey,* 196 Mass. 384, 387. *Von Arx* v. *Shafer,* 154 C. C. A. 407; *S. C.* 241 Fed. Rep. 649, 650. Although there are contrary decisions on this point, to the effect that good faith may be a defence or that there is liability only if there is malice, the weight of authority is in favor of the absolute liability established so firmly in our jurisprudence by the decisions already cited as not to be open further to discussion. The case at bar is indistinguishable in essence from the established

liability of election officers for a well intentioned mistake of judgment in refusing registration and in denying the right to vote to one duly qualified. *Lincoln* v. *Hapgood*, 11 Mass. 350. *Blanchard* v. *Stearns*, 5 Met. 298, 300. *Kinneen* v. *Wells*, 144 Mass. 497, 504.

It is plain that the defendants never acquired a jurisdiction to exercise their *quasi* judicial functions respecting the removal from office of the plaintiff, because they never notified him and never gave him a copy of the charges against him and he did not voluntarily submit himself to their action, but has resisted and asserted the invalidity of their procedure at every point. The full performance of all conditions established by the statute are essential prerequisites to the jurisdiction of the municipal council over the subject matter of the removal of an officer. There is no delegation of judicial power to the municipal council. *Holcombe* v. *Creamer*, 231 Mass. 99, and cases collected at page 111. That hardly could be done under our Constitution, which sharply separates the three departments of government. *Boston* v. *Chelsea*, 212 Mass. 127.

The municipal council was clothed with the power of removal of city officers so long as there was conformity to the requirements of the law. When the members ceased to comply with the law they were acting outside their official capacity and were subjected to responsibility as individuals.

It follows that the trial judge rightly ordered verdicts for the plaintiff for at least nominal damages. *Ransom* v. *Boston*, 196 Mass. 248.

The plaintiff was entitled to have considered as an element of his damages the amounts reasonably paid for counsel fees in procuring reinstatement in office. He was obliged to resort to the court for redress and to employ counsel to that end. Those proceedings were rendered imperative, in order that he might protect his rights, by the tortious conduct of the defendants. The plaintiff was not obliged to incur these expenses through any misfeasance or contract of his own, but wholly by reason of the wrongdoing of the defendants, of which these expenses were the immediate and direct result. As was said in *Wheeler* v. *Hanson*, 161 Mass. 370, 376: "It has been held more than once in this State, that when the plaintiff has, in consequence of the wrongful conduct of the defendant, been put to expense in the employment

of counsel, the amount so paid is an element of damage in an action against the defendant arising out of such wrongful conduct." *Berry* v. *Ingalls,* 199 Mass. 77. *Maguire* v. *Pan-American Amusement Co.* 205 Mass. 64, and cases collected at page 68. *Sears* v. *Nahant,* 215 Mass. 234, 239, 240. The case at bar is within this principle. It is quite different from those decisions where the taxable costs are held, so far as concerns a particular proceeding, to be full compensation for expenses in conducting litigation, such as *Newton Rubber Works* v. *De las Casas,* 182 Mass. 436, and cases cited at page 438, and *McIntire* v. *Mower,* 204 Mass. 233, 237. See *Fitzgerald* v. *Heady,* 225 Mass. 75.

There was no error in permitting the jury to consider the damages caused to the plaintiff by being obliged to resign his office. It might have been found that the plaintiff's inability to secure the required surety on his bond was due directly to the illegal conduct of the defendants and flowed from it as a natural consequence. See *Ransom* v. *Boston,* 192 Mass. 299, 307. It is not an answer in this connection that the plaintiff was restored to his office by mandamus proceedings and was ultimately paid his salary up to the time of his resignation. With respect to the conduct of the defendants here in issue, the plaintiff had a legal right to remain in office unmolested. If the unlawful efforts of the defendants to remove him from office so injured his standing and reputation in the community and with bonding companies that he could no longer secure surety on his bond and thereby was compelled to resign, that would constitute an element of damage provided he was unable to get more lucrative employment elsewhere.

Testimony as to the reasons given by agents of the bonding companies for refusal to become surety on the plaintiff's bond was competent. *Weston* v. *Barnicoat,* 175 Mass. 454. *Hubbard.* v. *Allyn,* 200 Mass. 166, 174.

The plaintiff was entitled to have the jury consider in assessing his damages the mental suffering which he sustained so far as it was the natural and proximate result of the unlawful conduct of the defendants. It might have been found that a feeling of humiliation and a sense of degradation would ensue to the ordinary person as the normal and direct consequence of the illegal expulsion from office. Mental suffering ordinarily has been held not

to be an independent cause of action. The reason for this in large part, as was said by Lurton, J., in a dissenting opinion in *Wadsworth* v. *Western Union Telegraph Co.* 86 Tenn. 695, "is found in the remoteness of such damages and in the metaphysical character of such an injury. . . . Such injuries are generally more sentimental than substantial." *Summerfield* v. *Western Union Telegraph Co.* 87 Wis. 1. The rule is well settled, however, that if the natural consequence of the wrongful act, done wilfully or with gross negligence, is mental suffering to the plaintiff, then that element may be considered in assessing damages. *Meagher* v. *Driscoll,* 99 Mass. 281. *Fillebrown* v. *Hoar,* 124 Mass. 580, 585. In the application of this rule it has been held that one, acting on the erroneous but honest belief that the plaintiff was an apprentice in his employ, who made a false statement to that effect, the expected result being the discharge of the plaintiff, was liable in damages including mental suffering. *Lombard* v. *Lennox,* 155 Mass. 70. It also has been held that the jury, in assessing the damages to a boy "unlawfully excluded" from a public school, might consider the indignity or disgrace which followed the expulsion. In that case as reported there is shown no malice or want of good faith, and nothing more than honest mistake of their legal duty as to giving hearing on the part of the school committee. *Morrison* v. *Lawrence,* 181 Mass. 127. The case at bar falls within the principle applied in these two decisions and is indistinguishable from them in any essential particular. Good faith and absence of malice in the perpetration of such a palpable wrong to the plaintiff constitute no defence to the defendants against the almost inevitable effect of their acts. In *Bishop* v. *Rowley,* 165 Mass. 460, liability was established although apparently the school committee acted in entire good faith in refusing to grant a hearing to the scholar excluded from school. See *Austro-American Steamship Co.* v. *Thomas,* 160 C. C. A. 309; *S. C.* 248 Fed. Rep. 231. The case at bar is distinguishable from *White* v. *Dresser,* 135 Mass. 150, *Burton* v. *Scherpf,* 1 Allen, 133, *Lopes* v. *Connolly,* 210 Mass. 487, *Spade* v. *Lynn & Boston Railroad,* 168 Mass. 285, 289, and kindred decisions.

Evidence of the plaintiff narrating a conversation with the defendant Brown, wherein the latter stated in effect that he would "get even" with the Lowell Trust Company because its

president had refused to honor his note, was admissible as tending to show malice toward the plaintiff on the part of Brown, then an issue although subsequently waived, and also as tending to eliminate that charge as a cause of worry to the plaintiff. On cross-examination of the plaintiff it had been developed, that in the spring of 1917 after the illegal removals, action had been brought against him and the sureties on his bond by the city of Lowell, for failure to collect interest on deposits of city money from the Lowell Trust Company. It was pertinent, in reply to the natural effect of this evidence, for the plaintiff to testify that he had been informed from various sources that there was no ground for that action, in order to rebut the inference that his mental distress came from that cause.

It is not necessary to go through the exceptions to evidence in further detail. A careful examination of them satisfies us that there was no reversible error in these particulars.

The defendants' requests for rulings need not be reviewed one by one. It follows from what has been said that there was no error in the refusal of these requests, and that the instructions given are not open to just criticism in law.

*Exceptions overruled.*