FRANK P. CURRIER & others *vs.* ESSEX COMPANY & another.

Essex.　　January 8, 1934. — March 30, 1934.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Equity Jurisdiction,* To enjoin blasting. *Blasting. Nuisance. Equity Pleading and Practice,* Master: report, recommital; Decree.

In a suit in equity against one operating a quarry near the plaintiff's land, a master found that in several quarrying seasons previous to the commencement of the suit the defendant had done "deep" blasting with large charges of explosives, resulting in vibrations which shook the plaintiff's house, were a source of reasonable apprehension and alarm to persons on the property of the plaintiff, were "dangerous" to that property and affected its value while they continued; that the

defendant also had done other blasting without properly covering it, so that rocks were thrown on the plaintiff's land; that the blasting, if properly conducted, would cease to impair the value of the plaintiff's property; that, although the plaintiff's health had not been impaired, he had been disturbed in his peace and comfort through fear and alarm resulting from the defendant's operations, and thereby had been damaged in a certain sum; and that the defendant was negligent in conducting such operations. It appeared that the plaintiff had notified the defendant that he "was causing serious damage." A final decree was entered enjoining the defendant from operating the quarry in such a manner as to cause stones to be thrown on the plaintiff's land, commanding the defendant so to conduct the blasts that the plaintiff's property would not be damaged by vibration and there would not be interference with the reasonable comfort of the plaintiff and his reasonable enjoyment of his premises, and awarding the plaintiff damages in the sum assessed by the master. *Held,* that

(1) A finding was warranted that the defendant, in his blasting operations, was guilty of wilful conduct or gross negligence resulting in apprehension in the plaintiff's mind;

(2) The award of damages, which included as an element mental disturbance of the plaintiff, therefore was proper;

(3) The other provisions of the decree were proper.

No reason appeared, in the circumstances, for sustaining an objection to a master's report in a suit in equity on the ground of his failure to find and report the subsidiary facts upon which he based a certain conclusion of fact, to which objection was attached a request that the master append to his report, "for the sole purpose of enabling the court to determine such question of law," a summary of so much of the evidence as should be necessary for that purpose, "including particularly . . . [certain evidence set forth]"; and there was no error in the denial of a motion by the party, who filed the objection, to recommit for a report of further facts.

Where a lease of a quarry gave the lessee the exclusive right to work the quarry, and the lessor did not reserve any right to control nor exercise any control of the lessee's operations and had no knowledge of the manner in which the lessee conducted blasting in the quarry or of injury thereby caused to an adjacent landowner, it was error, in a suit in equity by the landowner against the lessor and the lessee, to enjoin the lessor from leasing the quarry "for quarrying purposes in which blasting is used" in such a way as to interfere with the reasonable comfort of the plaintiff and the reasonable enjoyment of his property.

BILL IN EQUITY, filed in the Superior Court on August 11, 1933, described in the opinion.

The suit was referred to a master under a rule directing him "to hear the parties, find the facts, and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request." Ma-

terial findings by the master are stated in the opinion. His certificate contained the following statement: "In the objections filed by the defendant Lawrence Crushed Stone Company the master was requested to append to his report 'for the sole purpose of enabling the court to determine such question of law' a summary of so much of the evidence relating to certain findings of fact. The evidence was not taken by a stenographer selected or approved by the master before any evidence was introduced, and there has been no special order of the court for such summary. I, therefore, have not made such summary. (Rule 90.)"

One of the objections filed by the defendant Lawrence Crushed Stone Company was the following: "Because the master, although thereunto requested, has not found and reported the subsidiary facts upon which he bases the conclusion found by him 'that the deep blasting as now done is so powerful and violent as to cause vibrations which are dangerous to the properties of the plaintiffs.' The defendant hereby presents with this objection a written request that the master shall append to his report for the sole purpose of enabling the court to determine such question of law, a brief, accurate and fair summary of so much of the evidence as shall be necessary for such purpose, including particularly . . . [certain evidence set forth]."

A motion by the defendant Lawrence Crushed Stone Company to recommit to the master for a report of further facts was denied by *Gray*, J., by whose order there were entered an interlocutory decree overruling said defendant's exceptions to the master's report and confirming it, and the final decree described in the opinion. Both defendants appealed from the final decree only.

*H. Williams*, for Lawrence Crushed Stone Company.

*F. N. Chandler*, for Essex Company.

*M. T. Currier*, for the plaintiffs.

PIERCE, J. This is an appeal from a final decree upon a master's report. The bill was brought by the owners of two dwelling houses, situated on Mount Vernon Street, in Lawrence, Massachusetts, to enjoin an alleged continuing trespass, an alleged private nuisance, and for the recovery

of damages. The defendant Essex Company is the owner of the premises on the opposite side of Mount Vernon Street from the plaintiffs. The defendant Lawrence Crushed Stone Company (hereinafter called the stone company) is the lessee of the land of the Essex Company opposite the land of the plaintiffs.

Upon the completion of the pleadings the case was sent to a master. The master's report, duly filed, discloses the following facts: The Essex Company is the owner of an undeveloped tract of land on Mount Vernon Street, opposite the premises owned by the plaintiffs. On the southerly part of the undeveloped land a rocky ridge rises to a height considerably above the levels of the northerly part, but only slightly above the levels of Mount Vernon Street. In the part of the ridge opposite the premises of the plaintiffs there is a large ledge the top of which forms the highest point of the ridge. The northerly side of the ledge presents an open face of rock, which has been subjected to quarrying operations for many years. In 1857, the Essex Company leased the ledge for quarrying purposes and, excepting certain intervals, from that date to the present time quarrying has been done by various lessees of the Essex Company. On October 1, 1926, the Essex Company leased for a term of ten years to the stone company (then called the B & J Construction Company) the ledge with rights of way thereto, giving the lessee "the exclusive right to quarry and take stone from" the said ledge. Under the lease "the lessor reserved no direction, supervision, or control over blasting at the ledge or any quarrying operations." As a matter of fact, "While the present lease has been in operation, the Essex Company has not done and has not had any control over any of the blasting described or referred to in the plaintiffs' bill of complaint. No complaint has been made by any plaintiff to the Essex Company about the said blasting or any injury therefrom prior to the bringing of this suit. Further, the Essex Company had no knowledge of the way in which the blasting was done or of any injuries caused thereby to the plaintiffs or their properties. From October 1, 1926, all blasting and quarrying at the ledge

have been done by the Lawrence Crushed Stone Company. The quarrying season extends from the early part of April to the last part of October in each year." The complaints are directed to the operations at the quarry during May, July and August, 1933.

The plaintiff Katherine C. Currier has lived in the vicinity of the ledge for about fifty years. She purchased the property on Mount Vernon Street about thirty years ago, and at that time knew of the existence of the ledge, its use for quarrying purposes, and the fact that blasting "was done to some extent when the ledge was operated." The plaintiffs Frank P. Currier and Katherine F. Currier had lived in the vicinity of the ledge when they built a bungalow on Mount Vernon Street opposite the land upon which the quarry was operated. Frank P. Currier denied knowledge of any blasting before 1930, but the master found, and his findings are to be taken as true, that he knew when the bungalow was built that blasting had been done at the ledge to some extent. The master further found that the plaintiff Katherine F. Currier had lived in the vicinity for about twelve years. She testified that she had observed the effect of the blasting ever since 1928, but the master states that he was "unable from the evidence to find that any blasting was done at the ledge from the time she began to reside in the locality [i.e., during twelve years] up to the time the bungalow was built, or that she had any knowledge of blasting at the ledge before the building of the bungalow" in 1926. The master finds that the bungalow, and the farmhouse of the plaintiff Katherine C. Currier were distant six hundred thirty, and nine hundred fifteen feet, respectively, from the face of the ledge where the blasting complained of was done. Although blasting was done before 1930, since that time "it has been done much more frequently, extensively, and violently." The ledge referred to is about sixty feet high and is constantly receding toward Mount Vernon Street as stone is removed in the progress of quarrying. Since 1930 deep blasts have been employed to loosen and throw down stones from the face of the ledge.

Those blasts are prepared by drilling vertical holes, sixty feet deep, from the top of the ledge to the bottom. The holes are drilled twenty-five feet apart, and about twenty feet from the face of the ledge. The holes are about five or six inches in diameter and require from one to three weeks to drill. They are charged with dynamite. As operated in the season of 1933, each hole contained from four to six hundred pounds of dynamite, and it is estimated that for every pound of dynamite exploded in deep blasting six tons of stone are loosened and thrown down. The dynamite is put in the hole and after the requisite amount is tamped the remaining part or top of the hole is filled with a tamped mixture of stone dust and water. When the hole is charged the dynamite fills a little more than the lower half, the remaining upper part being filled with the described mixture. Any number of holes when exploded is called a "shot." The superintendent in charge exploded two thousand pounds of dynamite with each "shot" during the season of 1930, but since 1930 has not used two thousand pounds of dynamite in any "shot." Besides the deep blasts another form is employed called "block blasting." This form is used to break up pieces of rock too large to be carried by a steam shovel after they are thrown down at the base of the ledge. Other than the mixture of stone dust and water, above described, there is no covering or protection over either the deep blasts or the block blasts.

"When blasting is done at the ledge a warning is given to the workmen in the quarry, but no warning has been given to the plaintiffs or anyone on their premises or on Mount Vernon Street." At various times during the blasting seasons since April, 1930, pieces of rock have been thrown upon the premises of the plaintiffs. Three stones were exhibited at the hearing before the master. "One weighed 1.984 pounds, another 1.703 pounds and a third 3.125 pounds." In July, 1932, a piece of stone the size of a man's hand was thrown by a blast and struck an automobile near which the son of a tenant of the bungalow was standing. During the blasting season of 1933, at various times, pieces of broken stone have been thrown by the

blasts upon the lawns at the bungalow and the property of the plaintiff Katherine C. Currier and also upon the roof of the bungalow. The master finds "that on five different occasions during the blasting season of 1933, and prior to the commencement of this suit, stones have been thrown upon the properties of the plaintiffs by the blasts."

On the above findings the stone company concedes that the throwing of stones as found by the master occurred, and that his findings are conclusive, but contends that the throwing of stones does not enter into normal quarry operation, and is in its nature accidental; and that if the trespasses occur often enough an injunction is warranted. It states in its brief that "This appeal is not particularly directed to that part of the report, nor to the action of the court upon it, but is principally concerned with that aspect of the case arising from the allegations of damage by vibration in the normal course of operating the quarry." Respecting the evidence introduced in reference to vibrations caused by the blasting and injury therefrom, the master found that the plaintiffs had not sustained the burden of proof relative to the other contentions that such vibrations had caused the cracking of plaster and window glass in the farmhouse, the cracking of plaster and masonry in the bungalow, and the cracking of window glass and the sinking of timbers in the barn. But he does find that the deep blasts caused vibrations in the neighborhood which very perceptibly shook the houses of the plaintiffs and are a source of reasonable apprehension and alarm to persons on the properties of the plaintiffs; that on one occasion such vibrations have put out of order a radio in the farmhouse; that on another occasion they have put out of order a radio in a house adjacent to the bungalow on the west of the plaintiffs' property; and that on still another occasion they have thrown down a mirror hanging in the house of such person. He further found "that the deep blasting as now done is so powerful and violent as to cause vibrations which are dangerous to the properties of the plaintiffs and render them less desirable for use and less marketable while blasts which cause such vibrations are

continued." His further findings are that the stone company "during the quarrying seasons of 1930, 1931, 1932, and 1933 was negligent in discharging deep blasts so near the houses of the plaintiffs that they were powerful enough to cause the vibrations above described, and that during the said seasons the said Lawrence Crushed Stone Company was negligent in discharging both deep blasts and block blasts without properly covering or protecting them so as to prevent the throwing of broken stones upon the lands of the plaintiffs, and that the said negligence of the Lawrence Crushed Stone Company still continues"; that the health of the plaintiffs had not been impaired, but that the plaintiffs Frank P. Currier and Katherine F. Currier during the blasting season of 1933, prior to the commencement of this suit, while living in the farmhouse, have been disturbed in their peace and comfort through fear and alarm because of the throwing of stones and by the vibrations caused by the blasts, as aforesaid, and that for this disturbance of their peace and comfort they are entitled to damages each in the sum of $200; that although the market value of the properties of the plaintiffs "will be affected while the flying of stones and said vibrations sufficient to shake the house continue," the plaintiffs have not lost any sale of their properties up to date, and that such impairment of market value will be relieved if the blasts are modified and protected so that the trespasses and negligence found shall no longer continue.

The first objection of the defendant stone company is to the finding that the vibrations were dangerous. This objection seems to be based upon the theory that the damages were awarded for the reason that the vibrations arose from the mere negligence of the stone company, and that they were dangerous and a source of reasonable apprehension and alarm to the plaintiffs Frank P. and Katherine F. Currier. If we assume, but without so deciding, that blasts which cause concussions of the air and are a reasonable source of apprehension and alarm to persons affected by the vibrations do not give an action for damages to persons injured, against persons negligently operating the blasts, unless their

fright and alarm are accompanied by some physical injury from without, *Spade* v. *Lynn & Boston Railroad,* 168 Mass. 285, 290, we think the admission of the stone company "that the plaintiffs have notified this defendant that it was causing serious damage," and the finding that the stone company was discharging the block and deep blasts without properly covering or protecting them so as to prevent the throwing of broken stones upon the lands of the plaintiffs up to the time of the hearing, warranted the finding of the master that the stone company was negligent. It also warranted a finding that the natural consequence of the blasting as conducted was the creation of fear and apprehension in the minds of the plaintiffs, and was not mere negligence in the stone company but wilful and, considering the great quantity of dynamite exploded with the "shots," gross negligence. In the circumstances here shown the plaintiffs are entitled to recover full compensation. *Meagher* v. *Driscoll,* 99 Mass. 281. *Fillebrown* v. *Hoar,* 124 Mass. 580, 585. *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 185.

The evidence was ample to support the finding of negligence in the operation of the blasts, and this negligence is to be found both in the size of the blast and in the manner of operating it. Indeed the throwing of stones on the lands of the plaintiffs in the way shown by the report was a private nuisance for which the plaintiffs suffering damages were entitled to reimbursement. *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447.

The final objection of the defendant stone company is that the master has not found and reported the subsidiary facts upon which he bases the conclusion of fact found by him, and also because certain facts found are inconsistent with certain other specific facts found. A motion to recommit to the master was denied by the judge. The allowance of this motion was discretionary, especially as it appears by the certificate of the master attached to the report that "The evidence was not taken by a stenographer selected or approved by the master before any evidence was introduced, and there has been no special order of the Court for such

summary. I, therefore, have not made such summary. (Rule 90.)" *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, and cases cited.

The defendant stone company's exceptions to the master's report were overruled and the plaintiffs' motion to confirm the report was granted by an interlocutory decree. A final decree was entered in the form which follows: "This case came on to be further heard and thereupon, it is ordered, adjudged and decreed: (1) That the defendant, Essex Company, its officers, servants, agents and attorneys be and they are perpetually enjoined from leasing the said ledge owned by them for quarrying purposes in which blasting is used which will throw stones or cause the said stones to fall on the premises of the petitioners, or cause the houses or buildings of the plaintiffs to be shaken or damaged by vibrations or concussions to such an extent as to interfere with the reasonable comfort of and the reasonable enjoyment of the property of the plaintiffs. (2) That the defendant, Lawrence Crushed Stone Company, its officers, servants, agents and attorneys be and they are perpetually enjoined from so operating the ledge as to cause stones or fragments of stone to fall or be thrown upon the plaintiffs' premises; and to so regulate the blasts that the houses and other buildings of the petitioners will not be damaged by the vibrations or concussions; and that the reasonable comfort of the plaintiffs and their reasonable enjoyment of the premises shall not be interfered with. (3) That as and for damages suffered by the plaintiff[s], Katherine F. and Frank P. Currier on account of the wrongful acts of the defendants and of the nuisances by it committed, the defendants pay to the petitioners above named the sum of $200 each, and that costs be assessed in the sum of $26.90 against the said defendants." This decree so far as it commands action by the Essex Company, its officers, servants, agents and attorneys is without support in the findings of the master. *Earle* v. *Hall,* 2 Met. 353. *Hilliard* v. *Richardson,* 3 Gray, 349, 354. *Caldwell* v. *Slade,* 156 Mass. 84, 86. *Marston* v. *Rose,* 275 Mass. 443. Compare *McConnon* v. *Charles H. Hodgate Co.* 282 Mass.

584. It follows that the final decree so far as it relates to the Essex Company is reversed with costs to that company; so far as it relates to the stone company, as modified and amended it is affirmed with costs to the plaintiffs.

*Ordered accordingly.*