ANTONIO SILVA *vs.* BRISTOL & WARREN WATER WORKS.

NOVEMBER 14, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, and Condon, JJ.

CAPOTOSTO, J. This is an appeal from the decision of the superior court denying and dismissing a petition for compensation under the Workmen's Compensation Act, chapter 92, G. L. 1923, and amendments thereto.

The petitioner, a laborer in the defendant's employ, on October 31, 1932, was riding in the cab of defendant's truck in going from one job to another. His claim is that as the truck was proceeding along Cherry street in Bristol,

the truck struck something in the road, causing him to jounce from his seat and to strike his head against the roof of the cab. Aside from "Oh," the petitioner said nothing. The following day, he showed the driver of the truck an abrasion on his scalp but made no reference to any physical discomfort. He continued to work steadily until November 19 without making any complaint to his foreman or any one connected with the respondent. From that day on, however, the petitioner claims to have been totally disabled from doing any work because of pain in his head, dizziness, temporary blindness and weakness in his side. He called no doctor before November 29, and did not send word of his alleged disability to the office of the respondent until December 6 of that year.

The physician who first attended the petitioner testified that the only thing he could see or find the matter with him was a small scar on the top of his head. X-rays were taken with negative result, and a period of observation disclosed no cause for his complaints. Other doctors, who subsequently treated him, gave similar evidence, and all, excepting one that was noncommittal, agreed that he was able to work if he cared to do so.

In January, 1934, the petitioner went once to a certain physician for an examination. At the hearing before the superior court the following June, this doctor testified that all he could find in his examination of the petitioner was a slightly diminished knee jerk and some insensibility to the touch of a pin point on one side of the face, both of which things might or might not be attributable to the alleged injury. The only explanation he could offer for the petitioner's complaints was that, if what he said was true, the petitioner was suffering from a traumatic neurosis. This doctor further testified that the petitioner was able to work, but qualified his answer by saying that, after being idle for more than a year, he might not be able to start in on a full day's labor.

The credibility of the testimony was a material issue before the trial court. Its findings of fact must of necessity be based on the probabilities of the case, the natural and reasonable inferences to be drawn from the testimony, and especially the credence that should be given to the petitioner's statements, since whatever medical evidence he produced in support of his claim depended almost entirely for its conclusions upon the truth of his own assertions. In passing upon the reliability of the petitioner, an incident, which impresses us and probably influenced the trial court, occurred on May 25, 1934, about two weeks after the commissioner of labor denied the petitioner's claim and some two weeks before the hearing in the superior court. On that day, the doctor who first attended the petitioner, in response to an emergency call, went to his home and found him in bed, with his eyes closed and apparently unconscious. Being unable to discover any cause for this condition by examination, and receiving no answer to his questions, the doctor became suspicious and subjected the petitioner to the test of making him inhale ammonia fumes, which, according to the doctor, would have no effect in a case of true insensibility. The effect was immediate. The petitioner began to cough and gag, arose from his bed, walked across the room, spat into a receptacle, returned to bed, closed his eyes and resumed his apparent "unconscious condition." After this demonstration, the doctor was convinced that his services were not necessary.

The Workmen's Compensation Act has been construed by this court as a remedial statute to be liberally construed in order to accomplish the purpose for which it was intended. *Donahue* v. *R. A. Sherman's Sons Co.*, 39 R. I. 373; *Rhode Island Hospital* v. *Lewis*, 51 R. I. 73. The act did not intend to provide a medium for the prosecution of claims unsupported by credible evidence of probative force. We have outlined the facts in this case with some detail in order to emphasize this fact. The burden of proof rests with the petitioner to establish the causal connection between the

340

accident and any resulting ailment. *Desrochers* v. *Atwood-Crawford Co.*, 47 R. I. 116.

Section 6, article III of chapter 92, general laws 1923, provides that in proceedings under the Workmen's Compensation Act the "decree of the superior court" shall contain findings of fact, which, in the absence of fraud, shall be conclusive. The trial court found that the alleged injury "did not at any time either totally or partially incapacitate said petitioner from working." In *Jillson* v. *Ross*, 38 R. I. 145, the court says: "It must frequently happen that these questions can be determined only by inferences reasonably to be drawn from other facts directly proved. The determination of each of these issues is a finding of fact within the meaning of the statute, although it may be merely a conclusion deduced from other facts; and these, and not the evidentiary facts upon which they are based, are among the findings of fact which are to be placed in the decree by the requirement of the statute."

The respondent in the instant case asks us to pass upon the question whether the evidence given before the justice of the superior court was sufficient to sustain his findings. In the absence of fraud, the findings of fact by such justice will not be disturbed by us if there is any legal evidence to support them. *Jillson* v. *Ross, supra; Desrochers* v. *Atwood-Crawford Co., supra; Correia* v. *McCormick*, 51 R. I. 301. After a reading of the record, we are of the opinion that there was ample legal evidence to support the findings of the trial justice, which have not been attacked on the ground of fraud.

Counsel for the petitioner, in seeking to discharge his full duty to an apparently difficult client, relies upon the decision in *Hunnewell's Case*, 220 Mass. 351. We have examined that case with care and find that it furnishes no assistance to the petitioner. In the *Hunnewell* case the question before the court was the authority of the Industrial Accident Board to make an award to the workman for partial incapacity after total incapacity had been previously admitted and compensation therefor paid, rather than the funda-

mental and initial question of whether or not the workman had been injured in the course of his employment. The more serious difference between that case and the one before us is that in the *Hunnewell* case "The Industrial Accident Board found that he" (referring to the petitioner) "was 'partially incapacitated for work by reason of a condition of hysterical blindness and neurosis, said condition having a causal relation with the personal injury,'" while in the instant case, there is no such finding by the superior court, and no legal evidence which even remotely tends to establish a causal relation between the alleged injury and the subsequent condition claimed by the petitioner.

Our conclusion, therefore, is that the petitioner is not entitled to the relief prayed for.

The appeal is dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Lucien Capone*, for petitioner.
*Edward L. Leahy, Walter V. Moriarty*, for respondent.