*Northern District*

No. 4877

**AMALIA CAPONE, EXECUTRIX**

**v.**

**LOUIS DeGROOT**

(August 26, 1955)

*Eno, J.* By this action of contract the plaintiff seeks to recover for professional surgical services performed by her deceased testator on the wife of the defendant. The declaration is in two counts: one on an account annexed for $100 and the other, also for $100, for the fair value of medical and surgical services rendered. The defendant's answer consists of a general denial, denial of contract, and failure of consideration.

The reported evidence is as follows:

"Mrs. DeGroot, the wife of the defendant, had been recovering from a pregnancy and delivery of a still-born child when she was admitted to the Somerville Hospital because of hemorrhaging.

On or about December 5, 1952, Dr. Ciampa

operated on her to perform a hysterectomy. Following this surgery, she began to bleed profusely from the vaginal stump and was in serious condition. Mrs. DeGroot testified that she was semi-conscious and for a good portion of the time, totally unconscious until about December 25, 1952. During that time, according to the records of the Somerville Hospital which were admitted into evidence, Mrs. DeGroot received numerous blood transfusions and further surgery was done on her to correct this situation by Dr. Ciampa. These efforts were unsuccessful and on December 14, 1952, the late Dr. Capone, who was at that time chief of the surgical staff of the Somerville Hospital, operated on Mrs. DeGroot. The records of the Somerville Hospital showed an entry in which it was stated that at 8:30 A.M. on the morning of December 14, 1952, it was decided to perform this operation on Mrs. DeGroot by way of an incision to suture the vaginal stump so as to terminate the bleeding. The hospital records further showed that this operation commenced at about 10:00 A.M. and lasted until about noontime of that day. Dr. Capone was the operator; Dr. Ciampa was the assistant operator. At this time, the patient was on the danger list of the hospital, having been placed on said list some days prior and she was unconscious. The operation was successful and the patient was discharged from the Somerville Hospital on January 3, 1953. The records of the Somerville Hospital showed that the late Dr. Capone signed Mrs. DeGroot's discharge note on January 3, 1953 add that various entries in Mrs. DeGroot's hospital record from December 14, 1952 to January 3, 1953 were made by the late Dr. Capone and were in his handwriting. Mrs. DeGroot testified that she never saw or knew Dr. Capone.

Miss Joanna Johnson, a registered nurse who was the office nurse of the late Dr. Capone, at the time in question, testified that when Dr. Capone returned to his office from the hospital on December 14, 1952 and made his office record of Mrs. DeGroot, he said to Miss Johnson that were it not for the surgery he performed on Mrs. DeGroot, Mrs. DeGroot would have died. Further, Dr. Capone's office record which was in the handwritings of Dr. Capone and Miss Johnson showed a diagnosis of necrosis of Vaginal stump with hemorrhage, and further showed that the defendant was billed $100.00 for the services of the late Dr. Capone on January 2, 1953, February 17, 1953, May 1, 1953, and June 2, 1953. No attention was given to these bills of Dr. Capone by the defendant. Dr. Capone died on January 14, 1954."

The trial judge (*Deland, J.*) denied the following requests for rulings of the plaintiff; for the reasons thereafter stated:

"2. The law implies a promise to pay for the reasonable value of benefits received in the absence of evidence that they were conferred upon other grounds than that of contract."

"*As being inapplicable.*"

"4. A physician may recover for his services in a count for quantum meruit." "*As being contrary to facts found.*"

"7. The fact that the defendant did not object and did not communicate with the late Dr. Capone when the defendant was continually billed for the services rendered to Mrs. DeGroot, is evidence that Dr. Capone's services were not rendered on grounds other than that of contract." "*As the defendant was under no legal duty to object to Dr. Capone's bill; he could ignore it.*"

and allowed all of the following requests for rulings of the defendant:

"On all of the evidence and the law, the finding should be for the defendant.

1.   The burden of proof is upon the plaintiff to establish the identity of the defendant as being the contracting party in this action.

2.   The plaintiff has failed to prove any contractual relationship on the part of the defendant with the plaintiff in this action.

3.   The plaintiff has failed to establish the necessary elements of a valid contract, either express or implied between the parties in order to hold the defendant liable.

4.   The plaintiff cannot recover in 'quantum meruit', as the alleged contract lacks contractual relationship between the defendant and the plaintiff.

5.   The liability if any for services performed by the testator were incurred by a third party over whose conduct the defndant would not be liable.

6.   Whatever innocent the motive the plaintiff has the burden of proof of showing contractual liability in this action upon the defendant.

7.   An offer must be accepted by the person to whom it is made in order to give rise to a contract obligation. "A party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." *Boston Ice Co. v. Potter,* 123 Mass. 48.

8.   It is a fundamental rule of contracts that a person has a right to choose with whom he will contract, and if he has made an offer to a definite individual no other person can substitute himself for that individual as a party to the contract."

The trial judge also instructed himself that "the plaintiff's right to recover is based on the postulate that the condition of the Defendant's wife had devel-

oped an emergency so imperative that there was no reasonable opportunity for anyone to communicate with the defendant for his assent to the employment and operation of Dr. Capone. See: Restatement, Restitution, Chap. 5, Par. 113 and 114," and that "there is no legal liability chargeable to the Defendant," and found the following facts:

"1. Mae L. DeGroot, wife of defendant, had been recovering from a pregnancy and stillborn child, when she was returned to the hospital, as she was hemorrhaging.

2. Her surgeon, Dr. Ciampa, operated on her December 5, 1952, at the Somerville Hospital. Around December 13th, she began to bleed profusely. Dr. Ciampa treated her. On December 14, 1952, Dr. Capone operated. At that time the patient was on the danger list and unconscious. The operation was successful and the patient was discharged January 3, 1953.

3. Dr. Capone died. In the meantime, the patient was transferred to the Massachusetts General Hospital. The estate of Dr. Capone sent bills of $100 for the services of the Doctor, but no attention was given them.

4. The patient never saw or knew Dr. Capone. At the close of the Plaintiff's case, the Defendant rested.

5. From the evidence, I infer and find that the bill of Plaintiff's testator was fair and reasonable.

6. Dr. Ciampa did not testify but from the evidence, I infer and find as a fact that he was in charge of the case and the physician of Mrs. DeGroot.

7. From the facts in evidence, I infer and find as a fact that the patient, the wife of the Defendant, was in a serious condition, which was unallayed by the efforts, surgical and medical, of her physician, Dr. Ciampa, and that the services of Dr. Capone were procured, that he operated

upon Mrs. DeGroot, and that such operation was the effective cause of the recovery. No testimony was proferred who engaged the services of Dr. Capone or whether he was a volunteer.

8. From the facts in evidence, I infer an emergency arose and that Mrs. DeGroot, the patient, was not competent at the time but no evidence was offered as to the seriousness of this emergency, or if there was a reasonable opportunity to communicate with the defendant concerning the employment of Dr. Capone."
and found for the defendant.

The plaintiff claims to be aggrieved by the denial of his three requests for rulings and the allowance of all of the defendant's, and to the other rulings of the trial judge.

The report states that it "contains all the evidence material to the question reported."

The question in issue in this case fairly stated, is whether or not a qualified surgeon who performs an emergency, surgical operation on a man's wife, in danger of death, without first obtaining his consent thereto, can recover the fair and reasonable cost of the operation.

The defendant submitted no brief in this case, and the plaintiff in her exhaustive brief states that "examination of the decisions of the Massachusetts Supreme Judicial Court does not reveal any case in point with the facts of the instant case." We also searched and found no case in Massachusetts directly in point. The plaintiff, however, submits several cases from other jurisdictions.

In Arkansas, in a case where a surgeon, called by a bystander, performed an emergency operation on one who was comatose and who died, the Court, in remanding the case for error in admitting into evidence testimony of the extent of victim's estate on the issue of the surgeon's services, said:

"    Recovery must be sustained by a contract by implication of law    such contracts are

almost as old as the English system of jurisprud-
ence. They are usually called 'implied contracts'.
More properly they should be called 'quasi-con-
tracts' or 'constructive contracts'." *Cotnam, Ad-
ministrator v. Wisdom,* 83 Ark. 601.

In New Hampshire, in a suit for necessaries fur-
nished to an insane girl, the Court said:

"...A person utterly bereft of all sense and
reason by the sudden stroke of accident or dis-
ease may be held liable, assumpsit, for necessaries
furnished to him in good faith while in that un-
fortunate and helpless contract; and by this is
not meant...an actual contract—that is, an
actual meeting of the minds of the parties, an
actual mutual understanding, to be inferred
from language, acts and circumstances by the
jury...but a contract and promise said to be
implied by the law, where, in point of fact, there
was no contract, no mutual understanding and
so no promise...It is doubtless a legal fiction,
invented and used for the sake of a remedy...
When a contract or promise implied by law is
spoken of, a very different thing is meant from
a contract in fact, whether express or tacit...A
contract implied by law...rests on no evidence.
It has no actual existance. It is simply a mythical
creation of the law. The law says it shall be taken
that there was a promise, when in point of fact
there was none...The remedy of indebitatus
assumpsit can hardly be abolished in that large
class of cases where it can only be sustained by
resorting to a fiction until some other is furnished
to take its place." *Sceva v. True,* 53 N.H. 627;
*The Elliot Hospital v. Turcotte,* 79 N.H. 110;
*Kenny v. Wong Len,* 81 N.H. 437.

In Wisconsin the Court remanded the case for a
new trial because of failure to instruct the jury as
follows:

"If a physician, at the request of an attending
physician, renders surgical services to a patient,

even if there be an agreement between the attending physician and the patient, that he, the attending physician, shall pay the expense of the surgical survices of the consulting physician, the latter, being ignorant of such agreement, is entitled to recover under an implied contract from the party to whom and for whom such services were rendered, what the same are reasonably worth." *Garrey v. Stadler,* 87 Wisc. 512.

In a New York case, the issue was whether a physician, who was called by a hotel bellboy to attend a guest who had poisoned himself and did so attend the guest against the guest's will, is bound by N.Y. Code Civ. Proc. §834 prohibiting disclosure of information obtained in the doctor-patient relationship. The Court ruled:

"When one who is sick unto death is in fact treated by a physician as a patient, even against his will, he becomes the patient of that physician, by operation of law. The same is true of one who is unconscious and unable to speak for himself. If the deceased had been in a comatose state when the physician arrived, the existence of the professional relation could not be questioned." *Meyer v. Supreme Lodge, K.P.,* 178 N.Y. 63; Affirmed 198 U.S. 508.

In the United States the "distinction between a physician and a surgeon has never prevailed, and it is universally held that either is entitled to recover for his services, if not under express contract, then under an implied agreement to pay for them what they were reasonably worth. Ordinarily, such an agreement may be implied in fact, but such implication is not necessary to the physician's right of recovery, for the law will imply the agreement in the absence of any agreement in fact." 41, Am. Juris., §142; See also: Beach, Modern Law of Contracts, §639 et seq; Raoul v. Newman, 59 Ga. 408; 1, Williston on Contracts (Rev. Ed.) §3.

"It is important to distinguish between quasi-con-

tracts and contracts implied in fact . . . Quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties . . . The only limit in the last analysis to the catagory of quasi contracts is that the obligation in question more closely resembles those created by contract than those created by tort . . . ." 1, Williston on Contracts (Rev. Ed.) §3.

"A person who has performed the duty of another by supplying a third person with necessaries, although acting without the others knowledge or consent, is entitled to restitution from the other therefor if

"(a)   he acted unofficiously and with intent to charge therefor, and

(b)   the things or services supplied were immediately necessary to prevent serious bodily harm to or suffering by such person." Restatement, Restitution, §114.

"The law implies a promise to pay for the reasonable value of benefits received in the absence of evidence that they were conferred upon other grounds than that of contract." Lyons v. Jackson, 232 Mass. 275; Spring v. Hulett, 104 Mass. 591.

"A physician may recover for his services in a count for quantum meruit." *Glover v. LeTestue,* Quincy, 225.

"A husband is liable for suitable and necessary medicines and medical advice furnished to his wife in his absence . . . ." *Wood v. O'Kelley,* (8 Cush) 406.

Husband is liable for medical and surgical services furnished to his wife. *Thibeault v. Poole,* 283 Mass. 480; *Jenks v. Lang,* 302 Mass. 409; *McClallen v. Adams,* 10 Pick. 333.

We are of the opinion that according to the weight of authorities above cited and upon the fundamental principles of justice and equity in such cases that the plaintiff was entitled to recover, and that it was prejudicial error to rule at the request of the defendant that "on all of the evidence and the law, the finding should be for the defendant."

The trial judge having found that the bill of the plaintiff's testator was "fair and reasonable" and all the facts being before us, the finding for the defendant is to be vacated and a new finding in the sum of $100 is to be entered for the plaintiff on count one of her declaration.

For Plaintiff: Leon M. Fox, Boston.